NON–PUNITIVE SEGREGATION
INMATES OF HOLMESBURG
PRISON

v.

Thomas J. KELLY, Warden; David Owens, Superintendent of Prisons; John Doe; Jack Roe; Jim Moe; and Others Unknown; Correctional Officers; and the City of Philadelphia.

Civ. A. No. 80–159.

United States District Court,
E.D. Pennsylvania.

June 13, 1984.

Peter J. Goldberger, Villanova, Pa., for plaintiffs.

Jerome Silo, pro se.

Rosalie M. Leonard, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This action involved a challenge by several inmates to the conditions of confinement at Holmesburg Prison. I dismissed all claims except those arising out of an alleged denial by defendants of plaintiffs' access to the law library. After a bench trial on those claims, I found in favor of plaintiff Richard Harris and I found against plaintiffs Anthony Reid and Jesus Marrero. Because of circumstances described more fully in my Memorandum/Order dated January 25, 1984, I granted plaintiff Jerome Silo one year from the time of trial, May 1982, to show cause why I should not dismiss his claims. By the Memorandum/Order of January 25, 1984, I did dismiss Mr. Silo's claims.

Currently before the court are several submissions by both Mr. Silo and Mr. Silo's appointed counsel, Professor Peter Goldberger of Villanova Law School. The docket also discloses, however, that on March 15, 1984, Professor Goldberger filed a Notice of Appeal on behalf of Mr. Silo. Therefore, before considering the various submissions by Mr. Silo and Professor Goldberger, I must determine whether this court has any jurisdiction to decide any of the pending motions. In addition, I must determine whether I will consider any of Mr. Silo's *pro se* submissions when, at all pertinent times, Mr. Silo has been represented by Professor Goldberger. Professor Goldberger has skillfully and diligently represented all plaintiffs in this action since he accepted this court's appointment at an early stage in these proceedings.

## I. *Procedural History*

On January 27, 1984, the Clerk entered my Memorandum/Order of January 25 dismissing Mr. Silo's claims. On February 10, Mr. Silo filed a "Motion to Stay Execution of Memorandum/Order Entered January 27, 1984." Mr. Silo denominates this motion as one pursuant to Fed.R.Civ.P. 60(b). The motion challenges the validity of the January 25 Memorandum/Order on legal and factual grounds. Therefore the motion seems properly characterizable as a motion for reconsideration of the January 25 Memorandum/Order.

"Motions for reconsideration or reargument shall be served within ten (10) days after the entry of the judgment, order, or decree concerned." E.D.Pa.R.Civ.P. 20(g). Mr. Silo mailed his motion for reconsideration to the court and to opposing counsel. "Service by mail is complete upon mailing." Fed.R.Civ.P. 5(b). Mr. Silo certified that he mailed the motion on February 6, 1984, within the ten day period from January 27 prescribed by Local Rule 20(g). Therefore, if I am entitled to consider Mr. Silo's *pro se* submission at all, I will consider it as a timely filed motion for reconsideration.

As mentioned above, Mr. Silo's motion for reconsideration was filed by the Clerk on February 10, a Friday. In the meantime, Professor Goldberger had contacted my chambers to call attention to the fact that the Clerk had not entered a civil judgment in this case as a result of my January 25 Memorandum/Order and my Bench Opinion of May 12, 1982. Accordingly, I prepared an Order entering a civil judgment pursuant to Rule 58 which I signed on February 14, 1984. I had not, at that time, received Mr. Silo's motion for reconsideration. The Clerk entered the civil judgment on February 15.

Mr. Silo responded to the entry of the civil judgment with a *pro se* submission essentially incorporating his earlier petition for reconsideration. Mr. Silo certified that he mailed this submission on February 23, 1984. The Clerk filed this submission on February 27. Mr. Silo styled his February 27 submission as a motion under Rule 60(b). However, because he served this document on February 23, within ten days of the entry of the civil judgment, one could characterize this submission as a motion to alter or amend the judgment pursuant to Rule 59(e).

On March 15, 1984, Professor Goldberger filed a notice of appeal of the judgment entered against Mr. Silo. At the same time, he also filed a motion to withdraw as Mr. Silo's counsel.

By letter dated March 22, 1984, Mr. Silo responded to Professor Goldberger's motion to withdraw. Mr. Silo stated his opposition to that motion based upon a variety

of theories including the application of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), to relief of appointed counsel in this civil case. However, Mr. Silo requested further time to submit a more detailed response by affidavit.

On April 12, 1984, Mr. Silo submitted an affidavit which purported to support both Mr. Silo's opposition to Professor Goldberger's motion to withdraw and Mr. Silo's February 27 submission. In fact, the affidavit supports only the February 27 submission.

## II. *Jurisdiction*

The jurisdictional difficulty in this case arises out of Professor Goldberger's filing of a facially valid notice of appeal on March 15, 1984. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). Arguably, the notice of appeal divested this court of jurisdiction over any of the pending motions.[1]

A notice of appeal, however, has no effect during the pendency of a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). *See* Fed.R.App.P. 4(a)(4)(iii). The Supreme Court recently observed that Professor Moore has "aptly described the post-1979 effect of a Rule 59 motion on a previously filed notice of ap-

---

1. Because of my characterization of Mr. Silo's February 27 submission as a properly filed motion pursuant to Rule 59(e) to alter or amend the judgment, I need not specifically determine whether I would have jurisdiction over Professor Goldberger's motion to withdraw absent Mr. Silo's Rule 59(e) motion. I have found no reported decision dealing with the question whether an appeal divests the district court of jurisdiction over a motion of counsel to withdraw. A district court may, and indeed sometimes must, exercise jurisdiction over certain aspects of a case after an appeal of the district court's decision on the merits. For example, a district court will entertain a motion for attorney's fees during the pendency of an appeal of

its decision on the merits of the case. *West v. Keve*, 721 F.2d 91 (3d Cir.1983); *accord Masalosalo v. Stonewall Insurance Co.*, 718 F.2d 955, 956–957 (9th Cir.1983) (citing cases); *see also White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (implicitly approving procedure). However, a district court may not entertain all motions concerning legal representation after an appeal. At least two district courts, one in this district, have held that they had no jurisdiction to hear motions for appointment of counsel after the filing of a notice of appeal. *Glick v. United States Civil Service Comm'n*, 567 F.Supp. 1483, 1490 (N.D.Ill.1983); *Brinton v. Gaffney*, 560 F.Supp. 28 (E.D.Pa.1983).

peal: 'The appeal simply self-destructs.' 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 204.12[1] at 4–65 n. 17 (2d ed. 1982). Moreover, a subsequent notice of appeal is also ineffective if it is filed while a timely Rule 59 motion is still pending." *Griggs,* 103 S.Ct. at 403. Therefore, if Mr. Silo's "Motion to Stay Execution of Civil Judgment" ought properly to be regarded by this court as a timely Rule 59 motion, this court has jurisdiction to entertain all of the pending motions.

(A) *Jurisdiction to Characterize Mr. Silo's Submission and the Validity of the Pending Appeal*

The March 15, 1984, notice of appeal filed by Professor Goldberger on Mr. Silo's behalf is facially valid. If the filing of a notice of appeal "is an event of jurisdictional significance ... confer[ing] jurisdiction on the court of appeals and divest[ing] the district court of its control over those aspects of the case involved in the appeal[,]" *Griggs,* 103 S.Ct. at 402, then a facially valid notice of appeal arguably divests this court of jurisdiction to determine the character of a post-judgment motion and the consequent validity of the appeal. Arguably, I must await the Court of Appeals' decision whether Mr. Silo's "Motion to Stay Execution of Civil Judgment" constitutes a motion pursuant to Fed.R.Civ.P. 59(e) which nullifies the pending appeal.

Courts ordinarily have jurisdiction to determine their own jurisdiction. The only possible problem in this case is that in determining this court's jurisdiction, I must also necessarily determine the Court of Appeals' jurisdiction. I have found no reported decisions addressing this particular problem.

▉ In my view, a district court faced with a post-judgment motion and a subsequent notice of appeal has jurisdiction to determine whether the district court may properly address the post-judgment motion. The district court need not await the court of appeals' dismissal of the appeal.

This view draws support from the procedure for considering motions pursuant to

Fed.R.Civ.P. 60(b) announced by the Court of Appeals for the District of Columbia Circuit in *Smith v. Pollin,* 194 F.2d 349, 350 (D.C.Cir.1952), and more recently characterized as among the more rigid procedures by our Court of Appeals in *Main Line Federal Savings & Loan Ass'n v. Tri-Kell,* 721 F.2d 904, 906 (3d Cir.1983):

> When an appellant in a civil case wishes to make a [Rule 60(b)] motion ... while his appeal is still pending, the proper procedure is for him to file his motion in the District Court. If that court indicates that it will grant the motion, the appellant should then make a motion in [the Court of Appeals] for a remand of the case in order that the District Court may grant the motion ....

As mentioned above, a district court has no jurisdiction to consider a Rule 60(b) motion during the pendency of an appeal. However, a district court apparently ought to consider a Rule 60(b) motion made during the pendency of an appeal and the district court should indicate the disposition that it would make of the motion if it had jurisdiction.

A district court does have jurisdiction over a Rule 59(e) motion made before or during the pendency of an appeal. If a district court ought to consider a Rule 60(b) motion, over which it has no jurisdiction, then a district court certainly ought to consider a Rule 59(e) motion, over which it does have jurisdiction. Once having considered the motion, the district court should have authority to determine the motion's character. This enables the district court to resolve the motion if it is a Rule 59(e) motion, or to indicate the court's intention if the motion properly falls within another Rule.

Allowing the district court to characterize motions in the first instance promotes judicial efficiency. "The rule against concurrent jurisdiction is a judge-made rule, and should not be 'employed to defeat its purposes or to induce empty paper shuffling.'" *Main Line Federal Savings & Loan,* 721 F.2d at 907 (quoting 9 J. Moore,

B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.11 (2d ed. 1983)). In the ordinary situation, a district court will have more experience than the court of appeals with the nature of a litigation and the litigants involved in a case. This will enable the district court more quickly to characterize a motion as one pursuant to Rule 60(b) or Rule 59(e). Further, because a party has filed a facially valid notice of appeal in the Court of Appeals, that court can readily review this court's characterization of a motion, as well as this court's ruling on that motion, in its consideration of its jurisdiction over the appeal. Although this route may require appellants twice to file notices of appeal, it will save the parties considerable time by not requiring the district court to await the Court of Appeals' dismissal of an appeal before considering a pending Rule 59(e) motion.

### (B) *Status of the "Motion to Stay Execution of Civil Judgment"*

In order to retain jurisdiction over aspects of this case related to the presently pending appeal, I must conclude that the motion filed *pro se* by Mr. Silo constitutes a timely filed and properly made motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). This determination itself involves several subsidiary issues.

### (1) *Subject Matter*

Mr. Silo's "Motion to Stay Execution of Civil Judgment" seeks a vacation of the judgment entered on February 15, 1984. Rule 59 authorizes motions for a new trial, Fed.R.Civ.P. 59(a), and motions to "alter or amend a judgment," Fed.R.Civ.P. 59(e). A motion to vacate a judgment does not constitute a motion for a new trial. Mr. Silo does not request a new trial, he requests a judgment in his favor. However, a motion to vacate a judgment may properly be made under Rule 59(e). *Parks v. "Mr. Ford"*, 68 F.R.D. 305, 308–309 (E.D.Pa. 1975); 6A J. Moore, *Moore's Federal Practice* ¶ 59.12[1] at 59–289 (2d ed. 1983).

### (2) *Timeliness*

Appellate Rule 4(a)(4) provides that "a notice of appeal ... shall have no effect" only if "a *timely* motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 to alter or amend the judgment ...." Fed.R.App.P. 4(a)(4) (emphasis added). "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e).

▮ The Clerk entered the judgment against Mr. Silo on February 15, 1984. Mr. Silo did not file his "Motion to Stay Execution of Civil Judgment" until February 27. Mr. Silo did certify that he mailed his motion to all counsel on February 23. This constitutes proper service pursuant to Fed. R.Civ.P. 5(b). Rule 5(b) provides that "[s]ervice by mail is complete upon mailing." *Parks*, 68 F.R.D. at 307–08; *In re Todd Corp.*, 662 F.2d 339 (5th Cir.1981). Therefore, Mr. Silo's motion was served within the ten-day time limit prescribed by Rule 59(e).

### (3) *Designation under Rule 60(b)*

Although timely filed and although requesting relief appropriate to a motion pursuant to Rule 59(e), Mr. Silo's "Motion to Stay Execution of Judgment" was denominated by him as a motion for relief from a judgment pursuant to Fed.R.Civ.P. 60(b). While Mr. Silo is an experienced litigant, he is not a member of the bar. A question therefore arises whether this court ought to characterize Mr. Silo's motion according to its caption or according to its content.

Professor Moore argues that "[a] party should not be bound at his peril to give the proper nomenclature to his motion; this would be a retreat to the strict common law. So long as he makes a timely motion that states the reasons therefor, the court should grant relief appropriate thereto." 6A J. Moore, *Moore's Federal Practice*, ¶ 59.12[1] at 59–278 to 59–279 (2d ed. 1983) (footnotes omitted). The Court of Appeals for the Seventh Circuit has held that a motion which a district court could properly

consider under Rule 59(e) should be considered under Rule 59(e), even if the movant mislabels his motion. *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 652 (7th Cir.1984).

Our Court of Appeals has held that a district court ought to characterize post-trial motions according to their content when they have no designation under the Rules of Civil Procedure. *Turner v. Evers,* 726 F.2d 112 (3d Cir.1984) (motion for new trial is pursuant to Rule 59 but motion for reconsideration of denial of motion for new trial is pursuant to Rule 60(b)); *First Jersey National Bank v. Dome Petroleum Ltd.,* 723 F.2d 335, 337 (3d Cir.1983) (motion to reconsider grant of summary judgment is pursuant to Rule 59); *Barris v. Bob's Drag Chutes & Safety Equipment, Inc.,* 717 F.2d 52, 55 (3d Cir.1983) (motion for addition of delay damages is pursuant to Rule 60(a) and not Rule 60(b)). Ordinarily, the first post-judgment "bite at the apple" falls within Rule 59. *Turner v. Evers,* 726 F.2d at 114; *First Jersey National Bank,* 723 F.2d at 337; *Richerson v. Jones,* 572 F.2d 89, 93 (3d Cir.1978). However, there seems reason to doubt that our Court of Appeals would follow what appears to be the Seventh Circuit *Sutliff* view.

A recent unpublished Third Circuit opinion [2] states: "At least in cases where the motion is labeled as a Rule 60(b) motion and where treating it as a Rule 59 motion would 'destroy' appellate jurisdiction, we believe it should be treated as it is labeled." *In re Bankers Trust Co.,* 729 F.2d 1445, slip op. at 3–4 (3d Cir.1984) (per curiam) (footnote omitted); *see* 729 F.2d 1445 (1984) (note of decision). I do not believe, however, that the decision in *Bankers Trust* signifies that our Court of Appeals would adopt a strict rule requiring district courts to treat motions captioned as Mr. Silo's under Rule 60(b) when Rule 59(e) could apply.

In *Bankers Trust,* the appellant filed a motion denominated a motion under Rule 60(b) and later filed a notice of appeal. After the filing of the notice of appeal, the district court denied the motion. The appellant never refiled a notice of appeal. Thus, had the Court of Appeals decided that appellant's motion in the district court actually constituted a motion under Rule 59(e), the Court of Appeals could never have acquired jurisdiction, the time for appeal from the denial of the motion having run. By contrast, the instant case is not one in which treating as a Rule 59(e) motion what has been labelled a Rule 60(b) motion would permanently bar appellate review. If this court treats Mr. Silo's motion as one arising under Rule 59(e) and thereafter denies it, Mr. Silo will thereafter have an opportunity to file a timely notice of appeal.[3] Under these circumstances, the rationale of *Bankers Trust* would seem inapplicable.

### (4) *Pro Se Submissions by Represented Party*

■ Ordinarily, a court will not consider *pro se* submissions from a party represented by counsel. At all times pertinent to the pending motions, Professor Goldberger has represented Mr. Silo in this action. I have previously ruled more than once that Mr. Silo's practice of making submissions on

---

**2.** Unpublished decisions of the Court of Appeals have a somewhat problematic precedential effect. Under its Internal Operating Procedure 8(C), one panel of the Court of Appeals may not overrule a prior panel's *published* opinion. Thus, an unpublished panel opinion appears not to have any binding impact on a subsequent panel. *See also* IOP 5(F)(1). Although this may be taken to mean that an unpublished Court of Appeals opinion does not bind this court, that is not a required inference. In any event, an unpublished Court of Appeals opinion would at a minimum seem to be a strongly persuasive precedent.

**3.** While the filing of this second notice of appeal may seem no more than a procedural technicality, *Griggs* holds that it is a procedural technicality of jurisdictional dimension. Our Court of Appeals has recently expressed dismay at *Griggs'* appellate jurisdiction destroying effect. *Turner v. Evers,* 726 F.2d at 113. I share Judge Becker's view that an amendment to Appellate Rule 4 which would suspend, rather than nullify, an appeal during the pendency of a Rule 59 motion might prove salutary. *See id.* at 113 n. 1.

his own behalf was improper and that I would only consider submissions on behalf of plaintiffs filed by Professor Goldberger. *See* Order (January 11, 1982); Memorandum/Order at 3 (January 25, 1984).

■ These prior rulings do not cover the situation where a party's counsel seeks to withdraw. A party may always submit a *pro se* response to counsel's motion to withdraw. Thus, I may properly consider Mr. Silo's post-March 15 submissions. Mr. Silo's Rule 59 motion, however, presents a somewhat different problem.

As mentioned above, Rule 59(e) imposes a strict ten-day time limit on motions to alter or amend the judgment. A court may not extend this period. Fed.R.Civ.P. 6(b). Professor Goldberger and Mr. Silo had evidently discussed Professor Goldberger's intention to withdraw as counsel as of the end of the ten-day period for filing a motion to alter or amend the judgment. *See* Motion to Stay Execution of Civil Judgment at 4. Mr. Silo preferred to move in this court rather than to appeal. *See* Motion to Withdraw ¶ 11(b).

If Mr. Silo preferred to have this court reconsider the judgment entered against him, he could have moved pursuant to Rule 59(e) or Rule 60(b). However, had Mr. Silo not moved pursuant to Rule 59(e), his time for appeal would have continued to run from the time of the entry of judgment. Thus, Mr. Silo could not have both moved in this court and preserved his right to appeal if he permitted the ten-day Rule 59 period to elapse.

■ At the time, Mr. Silo and his counsel disagreed to the point that Professor Goldberger had expressed his intention to request leave to withdraw from Mr. Silo's representation. Given the rigid timing requirement of Rule 59(e) and Appellate Rule 4, imposing my earlier rulings concerning the propriety of *pro se* submissions by Mr. Silo on the Motion to Stay Execution of

Civil Judgment would be effectively to deny Mr. Silo the right to both move in this court and perfect a timely appeal following the disposition of his motion here. This denial would result from a formalistic view of Mr. Silo's "represented" status when, in fact, Professor Goldberger and Mr. Silo's relationship had deteriorated significantly. I decline, therefore, to regard Mr. Silo's *pro se* submission as improperly filed when Mr. Silo filed it during a period when he and his counsel had discussed his counsel's intention to move for leave to withdraw.[4]

■ For the foregoing reasons, I will treat Mr. Silo's "Motion to Stay Execution of Civil Judgment" as a timely filed motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). This nullifies the notice of appeal filed March 15, 1984. This court accordingly retains jurisdiction over both the rule 59 motion and Professor Goldberger's motion to withdraw as counsel for Mr. Silo.

### III. *Motion to Alter or Amend the Judgment*

Mr. Silo is a frequent litigant in this court and in the Court of Appeals. As is his wont, Mr. Silo's motion to alter or amend the judgment raises quite a number of more or less intelligible contentions. These contentions appear to fall into two categories. First, Mr. Silo makes a series of arguments addressed to prior rulings of this court; they perhaps argue that Mr. Silo was entitled to relief as a matter of law. Second, Mr. Silo alleges that a somewhat attenuated relationship between appointed counsel in another of Mr. Silo's many cases in this court and counsel for defendants in this matter implies a conspiracy between appointed counsel in the other matter and counsel for the defendants in this case to deprive Mr. Silo of an opportunity to present evidence in this matter and otherwise to taint these proceedings.

---

**4.** This reasoning does not necessarily apply to Mr. Silo's "Motion to Stay Execution of Memorandum/Order" which he filed on February 10, 1984. I have characterized this motion as one for reconsideration of the Memorandum/Order

dismissing Mr. Silo's remaining claims. Because the Rule 59 motion incorporates the earlier submission, I need not consider the motion for reconsideration independently.

### A. *Legal Contentions*

As explained more fully in my Memorandum/Order dated January 25, 1984, Mr. Silo's case had proceeded to a non-jury trial in May, 1982. If Mr. Silo had proven the claims upon which he was permitted to go to trial, Mr. Silo would have prevailed. However, Mr. Silo presented no evidence at trial: he refused to attend; he also refused to testify over the telephone.

Mr. Silo's failure to appear at trial to testify in support of his claims that he had been deprived of access to the prison law library would have justified entry of judgment against him at the time of trial. *See* Fed.R.Civ.P. 41(b). Rather than finding against Mr. Silo after presentation of plaintiffs' case, or after the close of all the evidence, I granted Mr. Silo the extraordinary opportunity to further supplement his case within one year following the trial. In January 1984, eighteen months following trial, Mr. Silo had yet to present any evidence supporting his claims. On this basis, and this basis alone, I dismissed those claims and entered judgment against Mr. Silo.

■ Mr. Silo's motion to alter and amend that judgment presents legal arguments tending to show why he had a right to prevail upon a claim that he was deprived of access to the prison law library. These arguments take as proven the facts which Mr. Silo has alleged. This court had already determined that Mr. Silo could prevail upon his claims arising out of the alleged deprivation of access to the library. Further argument on that score does not advance Mr. Silo's case. What Mr. Silo had to submit to this court was evidence tending to show a deprivation. The time to do so was at trial or during the one year grace period which I extended to Mr. Silo. That time has passed. Mr. Silo's legal contentions do not substitute for evidence or an offer of evidence. Accordingly, Mr. Silo's motion to vacate the judgment on the basis of his legal contentions has no merit.

### B. *Conflict of Interest*

As mentioned above, Mr. Silo litigates in this court with considerable frequency. In *Silo v. Marks*, Civil Action No. 81–2549 (E.D.Pa. filed June 18, 1981), Judge Lord appointed William T. Coleman, III, Esq., to represent Mr. Silo. Mr. Coleman is associated with the law firm of Pepper, Hamilton & Scheetz. In this matter, No. 80–159, first John Myers, Esq., and then Rosalie M. Leonard, Esq., represented defendants. Mr. Myers and Ms. Leonard are employed by the Philadelphia City Solicitor's Office.

During the pendency of this action, Barbara W. Mather, Esq., was a partner in the Pepper firm. Ms. Mather is married to T. Michael Mather, Esq., the First Deputy City Solicitor.[5] Mr. Silo contends that the marriage relationship between the Mathers created a conflict of interest disqualifying the City Solicitor's Office from representing defendants in this action. Mr. Silo further seems to suggest that this marriage relationship led to a concerted effort to deprive him of the use of the telephone.

■ To the extent that Mr. Silo contends that he could not testify in his own behalf because he lacked access to a telephone, the record simply belies the contention. Mr. Silo spoke with this court and Professor Golderberger over the telephone during his trial in this case and he refused to give testimony on his own behalf. This court would not have expected further submissions to take the form of oral communications over the telephone. The proferred use of the telephone during trial was an extraordinary accommodation to Mr. Silo; Mr. Silo had expressed fears about a transfer to a Philadelphia prison during the pendency of his trial. Therefore, even if Mr. Silo was improperly denied access to a telephone, he cannot have the judgment in this case vacated.

Mr. Silo's submissions might also imply a more subtle contention that this entire pro-

---

**5.** Ms. Mather has recently left the Pepper firm to become the Philadelphia City Solicitor. Mr. Silo makes no claim based on Ms. Mather's appointment, nor would such a claim have any apparent merit.

ceeding has suffered from some taint due to the Mathers' relationship. I am not certain that a later discovered ethical difficulty in representation of a civil plaintiff would justify vacation of a judgment against him. I need not make this determination, however, because the situation presented here involves no problems of professional ethics.

Attorneys practicing before this court are bound by the Code of Professional Responsibility as adopted by the Supreme Court of Pennsylvania. E.D.Pa.R.Civ.P. 14(IV)(B). As at least one commentator has pointed out, a marriage between two attorneys presents three sorts of potential problems under the Code of Professional Responsibility. Cross, *Ethical Issues Facing Lawyer-Spouses and Their Employers*, 35 Vand.L.Rev. 1435 (1981). First, the spouses may advertently or inadvertently disclose to each other their clients' confidences and secrets. *See* DR 4–101(B). Second, spouses may have financial interests in each other's success which may conflict with their clients' respective interests. *See* DR 5–101(A). Third, the representation by spouses of opposing interests may create an appearance of impropriety. *See* Canon 9. The effect of DR 5–105(D) compounds any potential problems by imputing an attorney's disability to his entire law firm or office.

■ Advertent disclosures of a client's confidences and secrets by an attorney to his or her spouse would violate DR 4–101(B) whether or not the attorney's spouse also practiced law. However, without more, a court should not presume that such advertent disclosures have occurred merely from the fact of the marriage relationship. "We cannot assume that a lawyer who is married to another lawyer necessarily will violate any particular disciplinary rule, such as those that protect a client's confidences, that proscribe neglect of a client's interest, and that forbid representation of differing interests." ABA Comm. on Ethics and Professional Responsibility, Formal Opinion No. 340 (Sept. 23, 1975), *reprinted in* 61 A.B.A.J. 1542 (1975).

Lawyers have many close relationships of which marriage is only one. Just as a court will not presume that lawyers will disclose confidences to their close friends, courts will not presume that lawyers will disclose confidences to their spouses.

In Formal Opinion 340, the ABA Committee recognized the possibility of inadvertent disclosures of confidences and secrets between married attorneys. *Id.* A court will not presume that this problem has arisen when neither partner to the marriage has any personal involvement in a litigated matter. It is difficult to imagine inadvertent disclosures between spouses when their only connections to a case are through other members of their offices.

The personal financial interests of a lawyer in his or her spouse's success in litigation may cause a lawyer to violate the strictures of DR 5–101(A). Disciplinary Rule 5–101(A) prohibits an attorney from accepting employment "if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests." The ABA Committee has suggested that courts evaluate such situations on a case-by-case basis. The Committee has placed special emphasis in this evaluation on the presence of a contingent fee arrangement; if either party has such an arrangement, spouses generally ought not represent opposing interests in a litigated matter. Formal Opinion 340, 61 A.B.A.J. at 1542.

■ In this case, defendants were represented by two salaried Assistant City Solicitors. In *Silo v. Marks*, Mr. Silo was represented by counsel appointed essentially on a volunteer basis. The Mathers had no direct involvement in either matter. It is difficult to imagine how either Mr. Mather or Ms. Mather would have had a financial interest in his or her associate's success. It is even more difficult to imagine how either Mr. Mather or Ms. Mather would have had a sufficient interest in his or her *spouse's* associate's success to have implicated Disciplinary Rule 5–101(A) even had one of the Mathers appeared in this

case or in *Silo v. Marks.* Thus, I find no actual or potential conflict of interest in this matter by virtue of the Mathers' relationship.

■ The possibility of an appearance of impropriety presents the most frequently troubling aspect of the lawyer-spouse conflict problem. An appearance of impropriety may arise in certain egregious examples, such as when spouses personally represent opposing parties in a litigation. *But cf.* Formal Opinion 340, 61 A.B.A.J. at 1342 (no per se violation of a Disciplinary Rule). But if courts regularly disqualified attorneys and their law firms from representing clients with interests adverse to clients represented by the attorneys' spouses' law firms, courts would effectively preclude married lawyers from practicing in the same communities as their spouses. The Georgia Supreme Court has refused to disqualify counsel under Canon 9 for precisely this reason. *Blumenfeld v. Borenstein,* 247 Ga. 406, 276 S.E.2d 607 (1981); *see also* Cross, 34 Vand.L.Rev. at 1451–1454. Justice Clarke aptly stated the Georgia court's view that "[a] per se rule would effectively create a category of legal 'Typhoid Marys,' chilling both professional and personal choices." 276 S.E.2d at 609.

I find the Georgia Supreme Court's concerns well-founded. Mr. Silo has argued that because defendants in this case were represented by associates of Mr. Mather and because Mr. Silo was represented in *Silo v. Marks* by an associate of Ms. Mather, an appearance of impropriety resulted. To reach that result would go a long way towards making lawyers married to other lawyers unemployable.[6]

IV. *Motion to Withdraw*

Professor Goldberger has moved to withdraw as counsel because he (1) plans to

move out of the area and (2) finds Mr. Silo an unreasonably difficult client to represent within the meaning of DR 2–110(C)(1)(d). Mr. Silo does not contest either of these allegations. Instead, Mr. Silo argues that, before Professor Goldberger can be permitted to withdraw, he must file an appellate brief satisfying the requirements of *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

In *Anders,* the Supreme Court held that a criminal defendant's right to counsel on his first appeal of right included a right to have counsel advocate the appeal rather than act as an *amicus curiae.* In the event that counsel can not in good faith prosecute the defendant's appeal to its conclusion, he must file a brief pressing defendant's best claims before withdrawing.

■ *Anders* applies specifically to appeals from criminal convictions. Civil litigants have no right to appointed counsel. Subject to counsel's ethical obligations and court approval, an appointed counsel may withdraw at any time without prejudicing a civil plaintiff's constitutional rights.

■ Mr. Silo has cited no case in which a court applied *Anders'* reasoning to an appeal from a civil judgment. This court's independent research has not located such a reported decision. Accordingly, Mr. Silo's contention on this score has no merit.

Immediate withdrawal by Professor Goldberger would prejudice Mr. Silo's rights, however. As discussed above, the notice of appeal filed by Professor Golderberger on Mr. Silo's behalf had no effect because of Mr. Silo's pending motion under Rule 59(e). Fed.R.App.P. 4(a)(4). I will therefore grant Professor Goldberger's motion to withdraw as counsel effective thir-

---

**6.** The court has no illusions that, if it adopted such a rule, the rule's burden would fall equally upon husbands and wives. The legal profession has a considerable road to travel before it completely integrates women into its midst. *Cf. Hishon v. King & Spalding,* —— U.S. ——, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A broad application of Canon 9 to lawyers and their spouses would quite possibly move the profes-

sion backwards on that road. "In admission decisions made by law firms, it is now widely recognized—as it should be—that in fact, neither race nor sex is relevant." *Hishon,* 104 S.Ct. at 2237 (Powell, J. concurring). Marriage to another lawyer (or another professional or an employee of another firm's client) is equally irrelevant.

ty-one days from the entry of the accompanying Order.