[No. F014568. Fifth Dist. Mar. 1, 1991.]

DALLIS I. HIGDON, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
LAURA L. HIGDON, Real Party in Interest.

[No. F014569. Fifth Dist. Mar. 1, 1991.]

STEPHEN LEWIS, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
JEAN LEWIS, Real Party in Interest.

COUNSEL

Edward J. Thomas and Ronald P. Kaplan for Petitioners.

No appearance for Respondent.

Joseph G. Giuffre, Falk & Falk and Gregory P. Falk for Real Parties in Interest.

OPINION

**VARTABEDIAN, J.**—Once a court commissioner resigns and joins a law firm, under what circumstances, if not in all instances, should the firm be disqualified from representing a party to an action which, in any contested part, was heard by the former commissioner? The instant consolidated petitions for writ of mandate present this question.

Both of the underlying actions are marital dissolution proceedings in which then Court Commissioner William T. Helms heard and decided contested matters. Upon his subsequent resignation, Helms accepted employment as an associate with the law firm of Edward J. Thomas. Laura L. Higdon and Jean Lewis, real parties in interest, each then filed in her respective case a motion to recuse Thomas, counsel for both petitioners, Dallis I. Higdon and Stephen Lewis. Each real party asserted Thomas's continued representation of her husband would give an "appearance of impropriety"; neither claimed an actual conflict of interest.

The respondent court granted the motions. Petitioners now request that we compel the respondent court to vacate its orders disqualifying Thomas.

DISCUSSION

*Standard of Review*

 Real parties and petitioners agree that the correct standard of review is that the trial court's decision will not be disturbed absent an abuse of discretion. (*River West, Inc.* v. *Nickel* (1987) 188 Cal.App.3d 1297, 1302 [234 Cal.Rptr. 33]; *Elliott* v. *McFarland Unified School Dist.* (1985) 165 Cal.App.3d 562, 567 [211 Cal.Rptr. 802].)

Real parties, however, go on to say the respondent court's decision cannot be questioned since no statement of decision was requested by counsel

at the time of the hearing. This reasoning clearly fails; *Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1026 [215 Cal.Rptr. 708], held that a statement of decision "is neither required nor available upon decision of a motion."

The absence of a statement of decision does not affect the standard of review. We presume that the court's order is supported by the record; if there is substantial evidence in the record to support the court's implied finding of fact, the factual finding will be upheld. However, the conclusion the court reached based upon those findings of fact will be reviewed by this court for abuse of discretion.

### *Recusal of Helms*

Petitioners argue that it was improper to disqualify Helms; but even if Helms was properly disqualified, it was an abuse of discretion to disqualify Thomas under the circumstances. Initially, we note that Helms's recusal was not the specific issue before the respondent court. Before the respondent court, each petitioner stated in his points and authorities, "Everyone agrees that Mr. Helms should not act as [petitioner's] attorney." The motion in question called for Thomas's recusal, and the court granted that motion. There was no discussion of disqualifying Helms nor any indication that he had undertaken any representation of petitioners.

Even though petitioners conceded before the respondent court that Helms should not personally act as counsel, a discussion of whether Helms's personal participation as counsel should be barred gives a foundation for determining Thomas's vicarious recusal.

A trial court's authority to order disqualification of counsel is found at Code of Civil Procedure section 128, subdivision (a)(5), which provides that the court shall have the power to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (See also *People* ex rel. *Clancy* v. *Superior Court* (1985) 39 Cal.3d 740, 745 [218 Cal.Rptr. 24, 705 P.2d 347]; *Mills Land & Water Co.* v. *Golden West Refining Co.* (1986) 186 Cal.App.3d 116, 126 [230 Cal.Rptr. 461].)

Real parties rely upon an appearance of impropriety. Indeed, "[J]ustice must satisfy the appearance of justice." (*Offutt* v. *United States* (1954) 348 U.S. 11, 14 [99 L.Ed. 11, 14, 75 S.Ct. 11].)

Real party Laura Higdon points to canon 9 of the American Bar Association (ABA) Model Code of Professional Responsibility, which provides: "A

lawyer should avoid even the appearance of professional impropriety." Canon 2 of the Code of Judicial Conduct of the Conference of California Judges (now the California Judges' Association) contains a similar provision relating to judges.

Laura Higdon goes on to cite ABA Model Code of Professional Responsibility, disciplinary rule 9-101(B), "A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee." She then cites ABA Committee on Professional Ethics, opinion No. 37 (1931), as quoted in *General Motors Corporation* v. *City of New York* (2d Cir. 1974) 501 F.2d 639, 649, " '[to avoid] the manifest possibility that . . . [a former Government lawyer's] action as a public legal official might be influenced (or open to the charge that it had been influenced) by the hope of later being employed privately to *uphold* or *upset* what he had done.' "

Before the respondent court, real parties argued that Helms would be disqualified under the compliance provision of the California Code of Judicial Conduct, which in part precludes persons who have been judges pro tempore from acting as lawyers in a proceeding in which they had served as judges or in any other proceeding related thereto.

As petitioners correctly point out, the compliance provision cited by real parties sets forth which judicial officers must comply with which canons. The definition of "judge" includes commissioners; under this code, "judge pro tempore" does not include court commissioners.

More generally, petitioners cite *Gregori* v. *Bank of America* (1989) 207 Cal.App.3d 291, 303-304 [254 Cal.Rptr. 853], for the proposition that disqualification rules promulgated by bar associations are not intended to be used as procedural weapons in disqualification cases:

"Indeed, the ABA Model Rules specifically provide that '[t]he fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule.' " (207 Cal.App 3d at p. 303.)

Quite to the contrary, most of the cases cited by petitioners recognize that the violation of a disciplinary rule may justify disqualification. (See for example the following cases which will be discussed *post*: *Chambers* v. *Superior Court* (1981) 121 Cal.App.3d 893 [175 Cal.Rptr. 575]; *William H. Raley Co.* v. *Superior Court* (1983) 149 Cal.App.3d 1042 [197 Cal.Rptr. 232]; *Elliott* v. *McFarland Unified School Dist., supra,* 165 Cal.App.3d 562;

and *Mills Land & Water Co.* v. *Golden West Refining Co.* (1986) 186 Cal.App.3d 116 [230 Cal.Rptr. 461].)

None of the cases or statutes cited by the parties directly answer the question of disqualification of a former judicial officer from personal participation as counsel. However, rule 1.12(a) of the ABA Model Rules of Professional Conduct, provides: "Except as stated in paragraph (d) [an exception not relevant herein], a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all parties to the proceeding consent after consultation."

Absent consent of the opposing party, under the cited rule, Helms would not be permitted to represent either petitioner.

We are satisfied that the rationale of rule 1.12(a) would give the trial court a sound basis to disqualify Helms from personal participation as counsel. (See also *In re Marriage of Thornton* (1985) 138 Ill.App.3d 906 [486 N.E.2d 1288], discussed *post.*)

### *Vicarious Recusal of Thomas*

No California published case has been cited, nor can we say that one exists, which addresses the circumstance here: namely, the recusal of a law firm because of an associate's previous activity as a judicial officer who had heard earlier proceedings in the action.

Laura Higdon argues that ABA Model Code of Professional Responsibility, disciplinary rule 5-105(D), requires that Thomas be disqualified. Rule 5-105(D) provides in its entirety: "If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment."

The parties disagree on the effect of rule 5-105(D). Generally, real parties demand strict construction; petitioners argue that it is a general rule subject to flexible construction.

Petitioners cite *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d 893, a case in which a former government employee's current law firm had been vicariously disqualified. There, a petition for writ of mandate was granted compelling the respondent court to vacate its order disqualifying the law firm; any appearance of impropriety was outweighed by policy consider-

ations. (*Id.* at p. 903.) Petitioners argue that by analogy the same reasoning should apply to the instant situation of a former judicial officer.

"We view the issue in light of substantial countervailing policy concerns and conclude that vicarious disqualification under the facts of this case was unwarranted and an abuse of discretion." (*Chambers v. Superior Court, supra,* 121 Cal.App.3d 893, 894.) The employee had formerly been employed by the Department of Transportation and in that capacity had had access to confidential information regarding the action in question. The record contained a declaration from the employee that he had never discussed the matter with anyone, and the declaration was not contradicted. (*Id.* at pp. 895-896.) The plaintiff was characterized in the case as "virtually an innocent bystander, and entitled to have counsel of choice." (*Id.* at p. 897.)

The *Chambers* court cited ABA formal opinion No. 342, issued November 24, 1975, published in 62 American Bar Association Journal (1976) page 517, which noted that disqualification of an attorney does not necessarily disqualify the entire firm. (*Chambers v. Superior Court, supra,* 121 Cal.App.3d at p. 899.) Opinion No. 342 set out policy considerations, noted in *Chambers* at page 899, including: interference with the right to counsel of one's choice, a restrictive impact upon the disqualified attorney's future employment prospects, and potential harm to the ability of the government to attract talented young attorneys. In this regard, agreeing with opinion No. 342, the *Chambers* court disapproved of a rigid application of disciplinary rule 5-105(D): "Mindful of those considerations the Ethics Committee stated that Disciplinary Rule 5-105(D) should not apply to the firm, partners, or associates of a disqualified lawyer who has been screened 'to the satisfaction of the government agency concerned from participation in the work and compensation of the firm or any matter over which as a public employee he had substantial responsibility.'" (*Chambers, supra,* at p. 899.)

Commanding the trial court to vacate its disqualification order, the *Chambers* court found:

"[T]here is no evidence that [the attorney in question] had any responsibility over matters related to the action herein or that he acquired confidential information regarding the action. Moreover, the firm has undertaken sufficient protective measures to screen [him] from any participation in the subject action . . . .

"[A]ny concern for an appearance of impropriety is greatly outweighed by the significant policy concerns expressed herein." (*Chambers v. Superior Court, supra,* at p. 903.)

■ *William H. Raley Co.* v. *Superior Court, supra*, 149 Cal.App.3d 1042 also discussed vicarious disqualification and the factors the court should consider when making that decision. "Exercise of that power requires a cautious balancing of competing interests. The court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest. [Citations.] In a case such as this the court also must consider in favor of disqualification the disruptive effect of repeated disqualification proceedings on the administrative process of the court [citation] and the financial burden of such proceedings on the moving party." (*Id.* at p. 1048.)

The *William H. Raley Co.* court found the lower court's failure to apply the rule of vicarious disqualification was an abuse of discretion in part because a partner in the law firm had a dual status amounting to a conflict of interest. While the instant case differs because no conflict of interest is even claimed, the approach stated in *William H. Raley Co.* is valid: "Automatic or mechanical application of the vicarious disqualification rule can be harsh and unfair to both a law firm and its client. [Citations.] The better approach is to examine the circumstances of each case in light of the competing interests noted above." (*William H. Raley Co.* v. *Superior Court, supra*, 149 Cal.App.3d 1042, 1049.) (See also *Elliott* v. *McFarland Unified School Dist., supra*, 165 Cal.App.3d 562, 567, where the court cited *Raley* as its source for the factors to be weighed when considering a recusal motion.)

*Mills Land & Water Co.* v. *Golden West Refining Co., supra*, 186 Cal.App.3d 116, concerned an attorney who had improper communications with another party and whose firm was disqualified. While upholding the disqualification of the attorney, the appellate court found the disqualification of the firm was an abuse of discretion. The court noted, "[W]e cannot say the disqualification of Smaltz personally was an abuse of discretion. But the same is not true with respect to Smaltz's law firm. The language of the court's order inescapably leads to the conclusion disqualification of the firm followed as a matter of course from Smaltz's disqualification." (*Id.* at p. 136.)

■ The ABA Model Rules of Professional Conduct strengthen petitioners' analogizing the situation of a former government attorney to that of a former judge. As previously noted, rule 1.12(a) considers the question of a former judge's practice of law. Going one step further, rule 1.12(c) provides:

"(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

"(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

"(2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule."

This model rule provided support for the decision of the Appellate Court of Illinois in *In re Marriage of Thornton, supra,* 486 N.E.2d 1288, a case directly on point. Thus, a relatively lengthy examination of that court's reasoning process is in order.

"On June 8, 1982, Elizabeth [wife in the dissolution case] moved to disqualify the law firm of Schiller & DuCanto from representing Edmund [husband] on the basis that the subsequent association of former Judge Charles Fleck, who had earlier denied a number of Elizabeth's discovery requests, created the appearance of impropriety in violation of Canon 9 and Rule 9-101(a) of the Illinois Code of Professional Responsibility. [Citation.] Former Judge Fleck had heard motions relating to this litigation from August 1981 until February 1982 when he assigned the cause to Judge Meehan on February 25, 1982. The trial on the remanded issues was commenced on April 12. Elizabeth's motion for disqualification was filed midtrial after, she claimed, she had first discovered the subsequent association of former Judge Fleck with Edmund's law firm.

"In an affidavit, attached to Edmund's response to her motion, former Judge Fleck stated that he had first been approached about employment with Schiller and DuCanto on March 14, 1982 and that he had begun negotiations with the firm two weeks later. On May 23, 1982, he tendered his resignation from the bench which became effective June 1, 1982, the day he stated he first became associated with Schiller and DuCanto. Also included with Edmund's response to the motion was an office memorandum circulated by Schiller and DuCanto among its employees, dated May 26, 1982, directing that former Judge Fleck was not to be consulted on the instant case and that his access to the case files was prohibited. Following arguments on the motion, the trial court denied the motion to disqualify.

"Canon 9 of the Illinois Code directs that a lawyer should avoid even the appearance of professional impropriety. Rule 9-101(a) bars a lawyer from accepting private employment 'in a matter upon the merits of which he has acted in a judicial capacity.' The Illinois Code is modeled upon the Ameri-

can Bar Association (ABA) Code of Professional Responsibility (1977). [Citation.] Rule 9-101(a) of the Illinois Code was retained without change from Disciplinary Rule 9-101(A) of the ABA Code. [Citation.]

"However, both parties fail to mention that the ABA Code has been replaced in August 1983 by the ABA Model Rules of Professional Conduct. [Citation.] Under the present ABA Rules, former Disciplinary Rule 9-101(A) is now Rule 1.12 and provides as follows:

" '(a) Except as stated in paragraph (d) a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge . . . unless all parties to the proceeding consent after disclosure.

" '. . . . . . . . . . . . . . . . . . . . .

" '(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

" '(1) The disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

" '(2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.

" '. . . . . . . . . . . . . . . . . . .
[Citation.]

"A significant change from the former ABA Code is the addition of a screening procedure to avoid automatic disqualification of a former judge's law firm. This screening procedure, which parallels Rule 1.11 of the ABA Rules, dealing with former government lawyers in private practice, was added in an effort to balance between the competing considerations of the appearance of impropriety and the risk that too severe a disqualification rule would act as a deterrent against lawyers entering public service. [Citation.]

"It is acknowledged by the parties that former Judge Fleck's activity with the case disqualifies him from representation under Rule 9-101(a) of the Illinois Code. The issue is whether the disqualification extends to former Judge Fleck's law firm. We hold that disqualification was not required in the instant case.

"We recognize the concerns voiced by Elizabeth of the legitimate need to discourage judges from handling matters in such a way as to encourage their own future employment and of the desirability of maintaining public confidence. However, we do not believe that to apply an inflexible extension of the rule of disqualification throughout an entire firm on the appearance of impropriety alone would serve the public interest in maintaining judicial integrity. Rather, to allow disqualification would have serious consequences for this litigation, by depriving Edmund of counsel of his own choosing and in unduly delaying resolution of this cause if a motion to disqualify were allowed mid-trial.

"The present Illinois Code requires that, at least insofar as former government attorneys are concerned, the only instances in which the attorney's entire firm is automatically disqualified is where the attorney is personally disqualified for conflict of interest under Rule 5-105(b). [Citation.] We believe that similarly a former judge's personal disqualification mandated by Rule 9-101(a) does not automatically result in the disqualification of his firm. [Citation.]

"While Illinois has yet to adopt the new ABA Rules, we believe that the screening procedures outlined in the new Rules adequately dissipate the appearance of any impropriety which might otherwise exist. In the instant case, the screening procedures followed, the adequacy of which Elizabeth does not challenge, were appropriate to remove any appearance of impropriety here. Accordingly, we conclude that the trial court's denial of the motion to disqualify was proper." (*In re Marriage of Thornton, supra,* 486 N.E.2d at pp. 1294-1296.)

The *Thornton* court relied in part upon ABA Model Rules of Professional Conduct, rule 1.12(c), which neither real parties nor petitioners have cited here. That rule envisions the erection of the so-called "Chinese wall" around the disqualified member of the firm to avoid having to disqualify the entire firm.

*Kovacevic* v. *Fair Automotive Repair, Inc.* (N.D. Ill. 1986) 641 F.Supp. 237 involved an assistant attorney general, Kurylak, in the franchise division who had investigated certain activities of Fair Automotive Repair, Inc. (Fair). Kurylak then went to work as a salaried associate at the law firm of Van Hagey and Bogan. That firm was then approached by a franchisee seeking representation against Fair, the franchisor. Fair moved to disqualify the firm. A "Chinese wall" was built around Kurylak as follows: "(1) Kurylak would have no involvement in the Fair litigation; (2) Kurylak would not discuss with anyone at Van Hagey and Bogan the information Fair provided to him while he was an assistant A.A.G.; (3) Van Hagey and

Bogan lawyers and staff would not discuss the Fair litigation with Kurylak; (4) Kurylak would have no contact with any of the plaintiff franchisees in this action; (5) Kurylak would not have access to any information regarding the case; and (6) Kurylak would have no contact with the Attorney General's Office regarding Fair. Both Kurylak and Van Hagey have submitted affidavits attesting to this 'Chinese wall' under penalty of perjury." (*Id.* at p. 238.)

The court agreed that the attorney could not represent the party in question but did not disqualify the entire firm. The court found that ABA disciplinary rule 9-101(B) operated to prevent Kurylak from representing the franchisee plaintiff. The court further noted that disciplinary rule 5-105(D), if read literally, would require the disqualification of the entire firm. "However many courts and commentators . . . have 'espoused a less Draconian approach' to D.R. 5-105(D)." (*Kovacevic, supra*, 641 F.Supp. at pp. 242-243, fns. omitted.)

The *Kovacevic* court then relied upon *Kadish v. Commodity Futures Trading Com'n* (N.D.Ill. 1982) 548 F.Supp. 1030, 1035, and ABA Model Rules of Professional Conduct, rule 1.11(a), dealing with former government attorneys, to conclude that the "Chinese wall" was adequate to safeguard confidences that Kurylak had obtained and refused to disqualify the entire firm. (*Kovacevic, supra*, 641 F.Supp. at pp. 242-244.)

In *Kadish, supra*, 548 F.Supp. 1030, the court had concluded that an attorney personally disqualified could be effectively screened from the firm so that the firm need not be disqualified.

"The proposed model rules represent a significant effort by the bar to update its ethical standards . . . . [T]he presumption in favor of vicarious disqualification is effectively eliminated. In its stead a screening procedure is approved." (Murphy, *Vicarious Disqualification of Government Lawyers* (1983) 69 A.B.A. J. 299, 303.)

We are mindful that, as was noted in *Klein v. Superior Court* (1988) 198 Cal.App.3d 894, 912 [244 Cal.Rptr. 226], "California precedent has not rushed to accept the concept of disqualifying the attorney but not the firm, nor has it enthusiastically embarked upon erecting Chinese walls." The *Klein* court noted that the exceptions were cases involving former government attorneys (such as in *Chambers*) and improper communications (such as in *Mills*); neither instance involved a conflict of interest. (*Klein, supra*, at p. 912.) The facts of *Klein* were different: a partner in the firm in question had previously received confidential client information creating a conflict of interest and there had been no attempt to screen him from the litigation;

disqualification of the firm as well as the partner was necessary. (*Id.* at pp. 913-914.)

We thus return to the fact that no conflict of interest is even alleged here; rather the appearance of impropriety is asserted as the sole basis supporting recusal of Thomas's firm. Except for authorized ex parte matters and instances of unethical behavior, a judge's role in a court proceeding does not present the opportunity for confidentiality with a party. (See Cal. Code of Jud. Conduct, canon 3.) ■ Nonetheless, the parties' and the public's perception of impropriety needs to be alleviated by a process which assures that neither the former judge nor his law firm has or will receive an unfair advantage. Screening serves this purpose. A trial court hearing a recusal motion thus must look beyond the mere allegation of appearance of impropriety to determine whether appropriate screening has occurred and whether screening can effectively continue to protect against the former judge's participation.

■ Here, no evidence was presented to the trial court to show whether Helms had or had not been screened from participating in the instant cases. Neither real parties nor petitioners directed the respondent court to the ABA Model Rules of Professional Conduct nor the *Thornton* case. We can only conclude the issue of screening Helms was not even considered.

In order to adequately exercise its discretion consistent with the precepts stated herein, the trial court needs to conduct a further hearing at which petitioners will have the burden to show that effective screening has taken place. Should the court determine that there are only two attorneys in the firm, that fact, by itself, would not disable petitioners from showing that appropriate screening has taken place.

■ Since the previously cited rule 1.12(c) of the ABA Model Rules of Professional Conduct has not been adopted in our state, such ABA standards serve as guideposts, and strict compliance with procedural provisions is not necessary to avoid disqualification. (See McMinn, *ABA Formal Opinion 88-356: New Justifications for Increased Use of Screening Devices to Avert Attorney Disqualification* (Nov. 1990) 65 N.Y.U. L.Rev. 1231, 1238.) For example, giving notice to the court to enable it to ascertain compliance is not required. ■ However, the trial court does need to be satisfied that the former judicial officer is screened from both participation in and receipt of fees from the case. Otherwise, there are no specific rules concerning what constitutes effective screening; needless to say, screening to avoid the appearance of impropriety, as is the case here, need not be as exhaustive as screening necessary to protect against an actual conflict of interests. (See McMinn, *supra*, at pp. 1258-1259.)

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to set aside its orders granting the motions to disqualify, to hold a further hearing at which each petitioner will be given an opportunity to make a factual showing that Helms has been effectively screened from the case, and reconsider said motions in light of this opinion. If effective screening is shown, the trial court shall enter an order denying that particular motion for recusal of Thomas. If effective screening is not shown, the court shall reinstate that particular order granting the recusal motion. Each party shall bear his/her own costs.

Ardaiz, Acting P. J., and Buckley, J., concurred.