[No. F015413. Fifth Dist. Oct. 22, 1991.]

ROSENFELD CONSTRUCTION COMPANY, INC., Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
PAUL SIVAS et al., Real Parties in Interest.

## COUNSEL

Kimble, MacMichael & Upton, D. Tyler Tharpe and Thomas T. Watson for Petitioner.

No appearance for Respondent.

Wild, Carter, Tipton & Oliver and Steven E. Paganetti for Real Parties in Interest.

## OPINION

**VARTABEDIAN, J.**—This is a petition for writ of mandate following respondent court's denial of the motion of petitioner, Rosenfeld Construction Company, Inc., to disqualify the law firm of Wild, Carter, Tipton & Oliver (hereafter Wild) in its representation of real parties in interest, Paul Sivas and Jeanet Sivas. We grant the petition in part, directing respondent court to conduct a new hearing utilizing the proper standard, which we discuss herein.

### PROCEDURAL AND FACTUAL BACKGROUND

Petitioner brought a motion for disqualification of opposing counsel, the Wild firm, on the basis it had formerly represented petitioner in a related matter.

The memorandum in support of the motion recited that in 1982, John Rosenfeld, petitioner's president, consulted Wild for advice and representation in a dispute with Mr. and Mrs. George Lawson regarding the Lawsons' failure to pay petitioner for constructing a home; the Lawsons answered the complaint and cross-complained asserting that petitioner had failed to construct the home in conformity with the construction contract and industry standards. Petitioner asked the court to take judicial notice of the contents of the court's file concerning the "Lawson controversy."

There was no reporter at the hearing on the motion.[1] Nor is there any indication whether the trial court took judicial notice as requested. The request has not been renewed in our court.

Wild acknowledged it represented petitioner for nearly four years in "relatively few matters," including the Lawson controversy.

The Lawsons had contended that the construction of their home was defective in the following respects: cabinetry, flooring, doors, water penetration into rooms and foundation, roof penetrations, moldings, painting, tile work and the grading of the property on which the house was constructed.

On November 18, 1988, real parties initiated a lawsuit against petitioner, alleging that it breached its contract with them by failing to construct their residence in conformity with the construction contract and industry standards, in particular in the following areas: cabinetry, flooring, doors, water penetration, painting, and grading of the lot on which the house was constructed.

At the time the lawsuit was commenced, real parties were represented by the law firm of Dowling, Magarian, Phillips & Aaron (hereafter Dowling). On January 8 or 9, 1991, as a consequence of attorney Steven E. Paganetti's change of employment from the Dowling firm to Wild, the Wild firm was substituted as counsel for real parties.

Petitioner's attorney, D. Tyler Tharpe, received the notice of substitution of attorneys on January 14, 1991. Tharpe had been present at the deposition

---

[1]The minute order of the court's ruling shows this as an "ex parte motion," with no appearances by any party: "Court met at: N/A."

of John Rosenfeld nearly a year earlier, at which time Rosenfeld had mentioned that petitioner was once represented by Wild. On February 1, 1991, Tharpe reviewed the deposition testimony, which reminded him of petitioner's prior representation by Wild.

On February 4, 1991, the next business day, Tharpe called the matter to John Rosenfeld's attention; on that same day, Rosenfeld instructed Tharpe to contact Wild, demanding that it immediately withdraw as counsel for real parties. Tharpe did so. Wild declined.

Before respondent court, petitioner argued that the appropriate test to apply to determine if disqualification was necessary was the substantial relationship standard. Claiming that the subject matters of the two lawsuits were substantially related, petitioner asked the court to disqualify Wild from the representation of real parties in the instant matter.

Rosenfeld's declaration in support of the motion to disqualify contained his statement that he spent "dozens of hours" with Robert H. Oliver, Trevor C. Clegg, William H. Leifer, and Victor D. Ryerson of the Wild firm concerning the Lawson dispute. Rosenfeld declared:

"[O]ver the course of those many years (1) I surrendered to WCT&O [Wild] all of the business' work files relating to the Lawson project, (2) I explained in detail to each of the above-mentioned attorneys at WCT&O my company's manner of operation, methods of construction and provision of warranty work, and (3) I disclosed to the same attorneys my strategies as they relate to handling customer complaints and the attorneys shared their strategies with me."

In his supplemental declaration, Rosenfeld further declared:

"3. . . . . Every attorney who assisted in representing ROSENFELD in the Lawson controversy met with me at one time or another, some more than others, and I shared confidential information with them about the nature of the complaints and the manner of ROSENFELD's construction as it related to the complaints. During the course of the prior representation, I shared my strategies with the WCT&O attorneys and they shared their strategies with me related to proving ROSENFELD's case against the Lawsons and defeating the Lawsons' claims against ROSENFELD.

"4. There is no question in my mind that the attorneys at WCT&O, owing to their extended representation of ROSENFELD, each had access to and actually accessed information which is confidential in nature and which is substantially related to the present action."

Four attorneys from Wild submitted declarations in opposition to the motion.

Robert Oliver declared that his firm represented Rosenfeld personally or the petitioner corporation "in relatively few matters through approximately 1985." He acknowledged that Wild represented petitioner in the controversy with the Lawsons and that the case ultimately involved litigation and arbitration, which was handled primarily by associate Victor Ryerson, who left the firm in early 1985. The case was concluded by Trevor Clegg and William Leifer.

Oliver further declared that Paganetti had not discussed the "substance of the Rosenfeld Construction Company, Inc./Lawson case" with him. Oliver went on:

"The file containing the *Rosenfeld Construction vs. Lawson* case has been closed for several years and stored in a location removed from our law offices. Only upon receiving correspondence alleging conflicts of interest was the file brought to this office so that declarations could be prepared by various partners in this firm."

William H. Leifer submitted a declaration in which he admitted he had reviewed the office file entitled Rosenfeld Construction Company, Inc. v. Lawson et al. Leifer noted:

"Even after reviewing the file and reviewing the documents that I could find in the file, I still have no recollection of ever having talked to John Rosenfeld in person. I have no notes indicating any phone conversations that I might have had with Mr. Rosenfeld. I find no correspondence with Mr. Rosenfeld that would indicate or refresh my recollection with any meetings I might have had with Mr. Rosenfeld. As I prepare this declaration, I have not talked with Steven Paganetti about any of the issues having to do with the Rosenfeld and Sivas matter other than I am aware that this has to do with construction issues on a residence. I have not in any fashion discussed with Mr. Paganetti any of the issues having to do with the Lawson matter and could not because I have no actual knowledge of the underlying facts giving rise to that case and I was not involved in any of the merits of the case except on a very limited basis as to the fact that it concerned a residence."

Trevor Clegg acknowledged that in 1983 he prepared and filed a complaint seeking foreclosure of petitioner's mechanic's lien on the Lawsons' residence and damages for breach of contract Clegg went on to note:

"4. . . . In the course of preparing the complaint, I did conduct discussions with Mr. John Rosenfeld, . . . To the best of my recollection, those discussions were neither lengthy nor detailed. They did touch on the Lawsons' complaints, but with the exception noted below, I do not recall any extended or detailed discussion of those complaints. . . .

"5. The one complaint that Mr. Rosenfeld and I discussed in some detail involved land subsidence or slippage around and under the Lawson residence. Mr. Rosenfeld maintained that the entire problem was the Lawsons' fault. . . .

"6. The only materials in our file that we received from Rosenfeld Construction consisted of rather unenlightening communications to and from the Lawsons and the Contractors License Board; a few scribbled notes by Mr. Rosenfeld; and a chronology of events prepared by Mr. Rosenfeld."

Paganetti declared that he never had any conversations with any of his fellow attorneys at Wild concerning the Lawson matter, nor had he seen any written documents relating to the Lawson matter. His comments included:

"All of the information I have obtained which I intend to use in the prosecution of the present action on behalf of plaintiffs has been generated solely from discovery performed by me. I do not intend to communicate in any manner with any other member of the law firm of Wild, Carter, Tipton & Oliver concerning the preparation of this matter through trial nor do I intend on reading any document concerning the *Rosenfeld Construction Company, Inc.* v. *Lawson* matter."

The minute order of the court's ruling reads in its entirety, "Motion to disqualify is denied. No present counsel at 'Wild, Carter, Tipton & Oliver' have sufficient knowledge of prior 'Rosenfeld' representation to disqualify the firm from representing the Sivas'. The court finds no actual or potential present conflict."

Petitioner asks that a writ issue compelling respondent court to vacate its February 14, 1991, order denying its motion and to enter a new order granting the motion in its entirety.

### DISCUSSION

A trial court's decision on disqualification should not be disturbed absent an abuse of discretion. (*Elliott* v. *McFarland Unified School Dist.* (1985) 165 Cal.App.3d 562, 567 [211 Cal.Rptr. 802].) The resolution of

factual issues arising from competing declarations is conclusive on the reviewing court, and conflicts in the declarations are resolved in favor of the prevailing party. (*Gregori* v. *Bank of America* (1989) 207 Cal.App.3d 291, 300 [254 Cal.Rptr. 853]; *Chadwick* v. *Superior Court* (1980) 106 Cal.App.3d 108 [164 Cal.Rptr. 864].)

Rule 3-310 of the State Bar Rules of Professional Conduct provides for the avoidance of representation of adverse interests.[2] ▉ It has long been recognized that knowledge obtained by one member of a firm of lawyers is imputed to all the other members. "The imputed knowledge theory holds that knowledge by any member of a law firm is knowledge by all of the attorneys in the firm, partners as well as associates." (*Chadwick* v. *Superior Court, supra,* 106 Cal.App.3d 108, 116.)

In 1953, the United States District Court for the Southern District of New York decided *T. C. Theatre Corp.* v. *Warner Bros. Pictures* (S.D.N.Y. 1953) 113 F.Supp. 265, in which the court held "[a] lawyer's duty of absolute loyalty to his client's interest does not end with his retainer. He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship. Related to this principle is the rule that where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited." (*Id.* at p. 268.) Further, "the former client need show no more than that the matter embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained." (*Id.* at pp. 268-269.)

The court went on to note that to require a client to show the nature of the confidential information "would tear aside the protective cloak drawn about

---

[2]Rule 3-310 of the State Bar Rules of Professional Conduct (23 West's Cal. Codes Ann. Rules, pt. 2 (1981 ed., 1991 cum. supp.) p. 551) provides in pertinent part:

"(A) If a member has or had a relationship with another party interested in the representation, or has an interest in its subject matter, the member shall not accept or continue such representation without all affected clients' informed written consent.

". . . . . . . . . . . . . . . . . . . . . . .

"(D) A member shall not accept employment adverse to a client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment except with the informed written consent of the client or former client."

the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule. . . . No client should ever be concerned with the possible use against him in future litigation of what he may have revealed to his attorney." (*T. C. Theatre Corp.* v. *Warner Bros. Pictures, supra*, 113 F.Supp. at p. 269.)

Other federal cases, including *Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 998, followed the substantial relationship standard set out in *T. C. Theatre Corp.*

In 1983, a California court first used the substantial relationship standard in *Global Van Lines, Inc.* v. *Superior Court* (1983) 144 Cal.App.3d 483 [192 Cal.Rptr. 609]. That court held:

"When a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information is presumed. [Citation.]

"This is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney. Nor should the attorney have to 'engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.' [Citations.]" (*Global Van Lines, supra*, 144 Cal.App.3d at p. 489.)

*Elliott* v. *McFarland Unified School Dist.*, *supra*, 165 Cal.App.3d 562 contained the following discussion of the substantial relationship standard:

"Case law interpreting what is 'confidential information' initially asks whether the former representation is *substantially related* to the current representation. [Citations.] Where the substantial relationship exists, especially where the relationship is such that confidential information normally would have been imparted to the attorney, a 'rule of necessity' causes a presumption of conflict. [Citations.] Actual possession of confidential information need not be proved to disqualify an attorney from representing the adversary of a former client in litigation against a former client. [Citations.]" (*Elliott, supra*, 165 Cal.App.3d at pp. 568-569, fn. omitted.)

However, in the *Elliott* case, the court concluded that since both McFarland and Elliott had signed a joint powers agreement regarding

representation by the same attorney, McFarland had waived the presumption of conflict arising from the attorney representing multiple parties. That being the case, in order to compel disqualification, McFarland had to show that the attorney or firm actually had obtained confidential information in the former representation. (*Elliott* v. *McFarland Unified School Dist.*, *supra*, 165 Cal.App.3d at p. 568.) Since McFarland offered no substantial evidence that such confidential information had been imparted, our court determined that the trial court did not err in denying McFarland's motion to disqualify Elliott's attorney.

Subsequently, our court decided *River West, Inc.* v. *Nickel* (1987) 188 Cal.App.3d 1297 [234 Cal.Rptr. 33], in which we reversed the trial court's order disqualifying counsel for a conflict of interest. In *River West*, the prior representation occurred more than 27 years earlier and the moving party had notice of the conflict over 3 years before he made the motion to disqualify. We determined that due to the long wait in bringing the motion to disqualify, an exception to the substantial relationship test could be found.

"If a substantial relationship is established, the discussion should ordinarily end. The rights and interests of the former client will prevail. Conflict would be presumed; disqualification will be ordered. However, it is not in the interests of justice to make the 'substantial relationship' rule *so unyielding* as to permit the former client to inexcusably postpone objections without penalty. Therefore, a narrow exception should apply if the present client, by way of opposition, offers prima facie evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client." (*River West, Inc.* v. *Nickel, supra*, 188 Cal.App.3d at pp. 1308-1309.)

While an exception was found on the particular facts, our court in *River West* left no doubt that the substantial relationship test is the proper standard. "Therefore, in the usual case when the substantial relationship of the matters is established, the inquiry ends and the disqualification should be ordered. If it were otherwise, a weighing process would be inevitable. The rights of the former client would be lined up against those of the new client, perhaps to the detriment of both. The purpose of the substantial relationship test is to avoid such an inquiry." (*River West, Inc.* v. *Nickel, supra*, 188 Cal.App.3d at p. 1304.)

"Disqualification of an attorney from representing a former client does not require proof of actual possession of confidential information." (*Western Continental Operating Co.* v. *Natural Gas Corp.* (1989) 212

Cal.App.3d 752, 759 [261 Cal.Rptr. 100]; see also *People* ex rel. *Deukmejian* v. *Brown* (1981) 29 Cal.3d 150, 156 [172 Cal.Rptr. 478, 624 P.2d 1206].)

While the substantial relationship test is central to the determination of attorney disqualification, the standard itself has not received much critical scrutiny. Yet both parts of the test, "substantial" and "relationship," are susceptible to a variety of meanings and interpretations.

The recent case of *H. F. Ahmanson & Co.* v. *Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445 [280 Cal.Rptr. 614] recognized the need for greater specificity in dealing with the standard. "The word 'substantial,' like other nonquantifiable denominators of measurement, is subject to a variety of interpretations. Use of the word 'relationship' implies a connection, but offers no guidance as to *what* is being connected: subject matters, facts, or issues." (*Id.* at p. 1453.) The *Ahmanson* court looked to *Silver Chrysler Plymouth, Inc.* v. *Chrysler Mot. Corp.* (2d Cir. 1975) 518 F.2d 751, 757, for an analysis of the substantial relationship test found in Judge Adams's concurring opinion. Judge Adams suggested that a court should "focus on the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases. As part of its review, the court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." (*Id.* at p. 760 (conc. opn. of Adams, J.).)

The *Ahmanson* court thus analyzed the question of whether a substantial relationship existed by applying three factors: factual similarity, legal similarity, and nature and extent of the attorney's involvement with the cases.

■ Here, the record does not reflect that the court applied the substantial relationship standard nor that significant inquiry was made concerning the three factors stated in *Ahmanson*. The respondent court, without benefit of the specific analysis contained in *Ahmanson* (which was not filed until May 7, 1991), merely determined that no present counsel at the law firm in question had "sufficient knowledge of prior 'Rosenfeld' representation" to disqualify the firm. The court then found no actual or potential present conflict existed.

We find no authority that supports the notion that, standing alone, the present recollection of the members of the firm is an adequate criterion.

The respondent court failed to apply the appropriate standard. Thus, we are unable to measure the exercise of its discretion. We therefore return the matter to respondent court to allow the court to evaluate the motion in light

of the appropriate standard. (*People* v. *Marquez* (1983) 143 Cal.App.3d 797, 804 [192 Cal.Rptr. 193]; see also *Woolfson* v. *Personal Travel Service, Inc.* (1971) 3 Cal.3d 909, 913 [92 Cal.Rptr. 286, 479 P.2d 646].)

In supplemental briefing, real parties suggest that if we determine the motion for disqualification was improperly denied, respondent court should be instructed to institute or impose a screening procedure such as we approved in *Higdon* v. *Superior Court* (1991) 227 Cal.App.3d 1667 [278 Cal.Rptr. 588] to avoid disqualification.

*Higdon* presented a very different situation—we were confronted with a case of first impression, involving the novel circumstance of a former judicial officer joining a law firm. In *Higdon*, we determined whether a former court commissioner, and the law firm he had joined, would be disqualified from representing the husbands in two separate dissolution actions. The former court commissioner had not represented any of the parties but had heard contested matters in the same actions. *Higdon* did not involve any allegation of conflict of interests or passage of confidential information, far less a presumption. Nor did it present a question of a firm's split loyalty in representing a present client whose interests may be in conflict with those of a prior client of the firm. By contrast, here, if the respondent court determines a "substantial relationship" exists, there is a conclusive presumption that confidential information has passed to the prior attorney.

In *Higdon*, while the former court commissioner was personally disqualified from handling a matter which he had previously heard as a judge, the remainder of the firm could avoid disqualification so long as it was proven that he had been and would continue to be screened from any participation in the case. We recognized there that existing California law resulted from very different circumstances concerning practicing attorneys changing employment and " 'California precedent has not rushed to accept the concept of disqualifying the attorney but not the firm, nor has it enthusiastically embarked upon erecting Chinese walls.' " (*Higdon* v. *Superior Court, supra,* 227 Cal.App.3d 1667, 1679, quoting *Klein* v. *Superior Court* (1988) 198 Cal.App.3d 894, 912 [244 Cal.Rptr. 226].)

Here, real parties' request would result in the *firm* being disqualified and the member *attorney* being allowed to continue representing the client. Screening under these circumstances would be even more drastic than the converse relationship criticized in *Klein*. Should the respondent court find the current representation is substantially related to the former, creating the conclusive presumption that the Wild firm possesses confidential information of its former client, petitioner, a screening procedure cannot suffice to safeguard against the conflicting representations.

Real parties argue further that they will be prejudiced if they must obtain new representation at this point. However, this argument fails to recognize that real parties had been represented by the *firm* employing Paganetti, not the individual attorney alone. The instant problem arose when real parties obtained new representation. Real parties were represented for some years by Dowling until they chose to substitute Wild. The determination of whether a client follows an attorney to a new firm should include some scrutiny of the conflicts of interest that might result. While attorneys should be able to move freely from membership in one firm to another and clients should be allowed their choice of an individual attorney, the importance of maintaining public respect for and belief in the integrity of the legal profession should not take a back seat to other considerations.

■ The right to counsel of one's choice must be balanced with "the paramount objective of maintaining public confidence in the impartiality of the courts and the integrity of its professional bar." (*Yorn* v. *Superior Court* (1979) 90 Cal.App.3d 669, 677 [153 Cal.Rptr. 295].)

We remand this matter to respondent court with instructions to apply the appropriate standard to determine if there exists a substantial relationship between the prior representation and the current representation based on the facts, the legal issues, and the nature and extent of involvement of the attorneys.

### Disposition

The petition for writ of mandate is granted; respondent court is ordered to set aside its order denying the motion for disqualification. Respondent court shall hold another hearing wherein it will consider relevant material bearing on the issue of whether or not there exists a substantial relationship between the present representation and the prior representation. If it finds such a substantial relationship, the court shall grant the motion for disqualification. The parties shall bear their own costs of the instant proceeding.

Stone (W. A.), Acting P. J., and Dibiaso, J., concurred.