[No. C044508. Third Dist. May 24, 2004.]

DERIVI CONSTRUCTION & ARCHITECTURE, INC., et al., Plaintiffs, Cross-defendants and Appellants, v.
PHILLIP WONG et al., Defendants, Cross-complainants and Respondents.

## COUNSEL

Hayes & Associates and Matthew J. Farrer for Plaintiffs, Cross-defendants and Appellants.

Peter J. Whipple for Defendants, Cross-complainants and Respondents.

## OPINION

**MORRISON, J.**—Derivi Construction & Architecture, Inc., Linda Derivi, and Steve Castellanos (collectively DCA) appeal from denial of their motion to disqualify attorney Peter Whipple and his law firm on the basis that Whipple is married to an attorney at another law firm that had previously been disqualified in this lawsuit. DCA contends the trial court abused its discretion in denying the motion by failing to consider circumstantial evidence and by following unpersuasive dicta in *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829 [115 Cal.Rptr.2d 847]. DCA's theory of disqualification goes beyond precedent in two regards. First, it bases the disqualification solely on a marital relationship and, second, it requires double imputation of confidential knowledge for vicarious disqualification. We decline to adopt this expanded theory of disqualification and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

DCA was hired by Phillip Wong to design and build a restaurant. DCA brought suit against Phillip Wong, his wife Wendy Kurihara Wong and related

entities (collectively the Wongs) for breach of contract and foreclosure of mechanic's lien to recover the value of labor, services, equipment and materials furnished by DCA. The Wongs filed a cross-complaint against DCA for breach of contract and professional negligence. The Wongs were represented by the law firm Herum Crabtree Brown.

DCA moved to disqualify the Herum Crabtree Brown law firm. DCA contended that Herum Crabtree Brown was disqualified from representing the Wongs in this dispute because James Brown, an attorney at Herum Crabtree Brown, had previously represented Linda Derivi, Steve Castellanos, and Derivi Castellanos Architects, Derivi Construction & Architecture's predecessor, in two lawsuits.

In opposing the motion to disqualify, Brown declared that he had represented Derivi and Castellanos, but had not received any confidential financial information from them and any business or litigation information he received could not possibly be relevant over 10 years later. He further declared that he had no involvement in the present case and had not discussed it with other members of the firm other than to consider the potential conflict of interest. The two attorneys at Herum Crabtree Brown handling the case, Steven Crabtree and Jennifer Doherty, declared they had not discussed any substantive aspects of Brown's prior representation of Derivi and Castellanos with Brown.

The trial court denied the motion to disqualify, finding DCA failed to establish a substantial relationship between the former and current cases.

Derivi petitioned for a writ of mandate in this court. This court issued an alternative writ of mandate directing the trial court to vacate its order denying the motion to disqualify the law firm of Herum Crabtree Brown and to enter a new order granting the motion or to inform this court that it has declined to do so. The trial court vacated its original order and entered a new order granting the motion to disqualify.

The Wongs substituted Peter Whipple and Mayall, Hurley, Knutsen, Smith & Green for Herum Crabtree Brown as attorneys. Whipple is married to Jennifer Doherty. Doherty is an attorney with Herum Crabtree Brown; she had been handling the representation of the Wongs.

Derivi moved to disqualify Whipple and Mayall, Hurley, Knutsen, Smith & Green from representing the Wongs. Derivi argued that because Whipple was married to Doherty, the substitution of Whipple for Herum Crabtree Brown was illusory and circumvented the intent of this court's alternative writ. Derivi further argued that Whipple's law firm should also be disqualified.

In opposition to the motion to disqualify, Whipple declared that no confidential information pertaining to DCA had been transmitted to him by Doherty or any other member of Herum Crabtree Brown and he had not seen or reviewed their file.

The trial court denied the motion and this appeal followed. An order denying a motion to disqualify opposing counsel is an appealable order. (*Meehan v. Hopps* (1955) 45 Cal.2d 213 [288 P.2d 267]; *Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 452 [111 Cal.Rptr.2d 842].)

## DISCUSSION

Rule 3-310(E) of the Rules of Professional Conduct of the State Bar of California provides: "A member shall not, without the informed consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." "Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950].)

While a former client may seek to disqualify a former attorney from representing an adverse party by showing that the former attorney possesses confidential information adverse to the former client, a showing of actual possession of confidential information is not necessary. (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1452 [280 Cal.Rptr. 614].) Instead, courts rely on the substantial relationship test: " 'When a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information is presumed. [Citation.]' " (*Rosenfeld Construction Co. v. Superior Court* (1991) 235 Cal.App.3d 566, 574 [286 Cal.Rptr. 609].) This rule is necessary because the former client does not have the power to prove what is in the mind of the former attorney. (*Ibid.*) In applying the substantial relationship test, courts should " 'focus on the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases.' " (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc., supra*, 229 Cal.App.3d at p. 1455.)

"The 'substantial relationship' test mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other." (*Flatt v. Superior Court, supra,* 9 Cal.4th 275, 283.) Additionally, courts increasingly recognize that motions to disqualify counsel may be misused to harass, delay litigation, or force a settlement. (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300–301 [254 Cal.Rptr. 853].)

■ Under the imputed knowledge theory, knowledge by any member of a law firm is imputed to all attorneys in the firm, whether partners or associates. (*Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d 566, 573.) Disqualification of an attorney extends vicariously to the entire firm. (*Flatt v. Superior Court, supra,* 9 Cal.4th at p. 283.)

■ A trial court has the power "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5).) This power includes disqualifying an attorney. (*Comden v. Superior Court* (1978) 20 Cal.3d 906, 916 [145 Cal.Rptr. 9, 576 P.2d 971]; *Gregori v. Bank of America, supra,* 207 Cal.App.3d 291, 299.) The exercise of this power is within the trial court's discretion and we review the decision on a motion to disqualify for abuse of discretion. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 [86 Cal.Rptr.2d 816, 980 P.2d 371].)

DCA contends the trial court abused its discretion in denying the disqualification motion. DCA contends the trial court erred in failing to consider circumstantial evidence that Whipple may receive confidential information. DCA argues it presented more evidence on this point than simply Whipple's marriage to Doherty. First, Herum Crabtree Brown had performed considerable work for the Wongs and the Wongs had invested considerable money, strongly suggesting the Herum Crabtree Brown work product would be shared with Whipple (although Whipple declared to the contrary). Second, Whipple failed to disclose his relationship to Doherty and Herum Crabtree Brown, which betrayed a guilty conscience. Finally, although the litigation was complex, Whipple immediately noticed the depositions of Derivi and Castellanos upon substituting in as counsel.

"Speculative contentions of conflict of interest cannot justify disqualification of counsel." (*Castro v. Los Angeles County Bd. of Supervisors* (1991) 232 Cal.App.3d 1432, 1442 [284 Cal.Rptr. 154].) DCA's purported circumstantial evidence amounts to nothing more than speculation. Other than the

fact of Whipple's marriage to Doherty, DCA provided nothing but speculation that Whipple had access to DCA's confidential information. Whipple's failure to disclose his marriage to Doherty is significant only if the marriage required disqualification, a point we discuss below. There is nothing inherently suspicious about immediately noticing the depositions of the principals in the case.

DCA further contends the trial court erred in relying on dicta in *DCH Health Services Corp. v. Waite, supra*, 95 Cal.App.4th 829. In that case, a hospital, a foundation and several individuals sued defendant for defamation. Three of the individual plaintiffs moved to disqualify defendant's counsel on the basis that counsel's wife, a judge, had been a member of the foundation's board of directors and thus had received confidential information from the foundation. (*Id.* at p. 831.) The appellate court reversed the order of disqualification. First, it found the individual plaintiffs had no standing to move for disqualification, only the foundation did. (*Id.* at p. 832.) Second, there was no basis for disqualification because an appearance of impropriety alone does not support disqualification. (*Id.* at p. 833.) Vicarious disqualification of an attorney should not be based solely on a marital relationship; courts should presume that, unless proven otherwise, lawyers behave in an ethical manner and do not violate confidences. (*Id.* at p. 832.)

DCA contends the reasoning of *DCH Health Services Corp. v. Waite, supra*, 95 Cal.App.4th 829, should not be followed because the existence of the marital privilege (Evid. Code, § 980) presents a daunting barrier to the discovery of confidential client information passing between spouses. DCA further contends that the case is unrealistic in presuming that lawyers act ethically. Indeed, DCA suggests that Whipple may be lying. DCA asserts *DCH Health Services Corp.*'s presumption that married lawyers behave ethically is so "disturbing" that six appellate court opinions citing the case were ordered depublished. This assertion is incorrect and misleading. Those appellate court decisions were simply not published, signifying only that they did not meet the standards for publication. (Cal. Rules of Court, rule 976(b).)

Recognizing that this court may not be willing to adopt a rule of automatic disqualification based on marriage, DCA submits this court should apply the modified substantial-relationship test set forth in *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324 [104 Cal.Rptr.2d 116].

In *Adams*, a law firm represented Aerojet on various matters relating to toxic contamination. A partner at the firm, who performed no work for Aerojet, moved to another law firm where he represented plaintiffs suing Aerojet over toxic contamination. Aerojet sought to disqualify the attorney. (*Adams v. Aerojet-General Corp., supra*, 86 Cal.App.4th at pp. 1329–1330.)

This court held a rule of automatic disqualification in such a situation went too far. (*Id.* at pp. 1334–1337.) Instead, we concluded that disqualification should not be ordered where there was no reasonable probability the firm-switching lawyer had access to confidential information. Where there was a substantial relationship between the current case and the matters handled by the firm-switching attorney's former firm, but the attorney did not personally represent the former client who now seeks to remove him from the case, the trial court should apply a modified version of the substantial relationship test and determine whether confidential information material to the current representation would normally have been imparted to the attorney during his tenure at the old firm. The court should focus on the relationship between the attorney and the former client's representation, the amount of time spent by the attorney on the former client, and the attorney's possible exposure to formulation of policy or strategy relevant to the current dispute. (*Id.* at p. 1340.) The attorney whose qualification is sought should carry the burden of proving he had no exposure to confidential information relevant to the current dispute and an affirmative showing, not simply a cursory denial, is required. (*Id.* at p. 1341.)

The concurring and dissenting opinion in *Adams v. Aerojet-General Corp.* would impose a greater burden on the attorney whose disqualification is sought. (*Adams, supra,* 86 Cal.App.4th at pp. 1342–1345 (conc. and dis. opn. of Scotland, P. J.).) Such attorney would have "to present a compelling prima facie showing that either (1) the former representation of the opposing party by the attorney's prior law firm did not have a substantial relationship to the matters at issue in the current lawsuit, or (2) the nature of the former relationship between the law firm and the opposing party was such that confidential information material to the current dispute normally would not have been imparted to the attorney." (*Id.* at pp. 1343–1344.)

DCA's theory of disqualification goes beyond the usual application of the substantial relationship test. Here, Whipple has never represented DCA nor has he been a member of or associated with a law firm that represented DCA; he has no direct relationship to anyone who has represented DCA. DCA's theory of disqualification requires two stages of imputation of possession of confidential information and an imputation based solely on a marital relationship. DCA would first impute Brown's presumed confidential knowledge of DCA, gained through his prior representation, to the entire Herum Crabtree Brown firm, including Doherty. Then, Doherty's vicarious disqualification would extend to Whipple based on their marital relationship. DCA offers no authority to support this expansion of attorney disqualification. The Wongs, on the other hand, offer authority to oppose it.

As noted, the court in *DCH Health Services Corp. v. Waite, supra,* 95 Cal.App.4th 829, rejected the argument that an imputation of possession

of confidential client information should be based solely on a marital relationship. We agree. "Lawyers have many close relationships of which marriage is only one. Just as a court will not presume that lawyers will disclose confidences to their close friends, courts will not presume that lawyers will disclose confidences to their spouses." (*Non-Punitive Segregation Inmates v. Kelly* (D.C.Pa. 1984) 589 F.Supp. 1330, 1338.) "[I]f courts regularly disqualified attorneys and their law firms from representing clients with interests adverse to clients represented by the attorney's spouses' law firms, courts would effectively preclude married lawyers from practicing in the same communities as their spouses." (*Id.* at p. 1339.)

DCA also breaks with precedent by applying double imputation to find vicarious disqualification. The boundaries of the application of the substantial relationship test for vicarious disqualification were examined in *Frazier v. Superior Court* (2002) 97 Cal.App.4th 23 [118 Cal.Rptr.2d 129]. In *Frazier*, petitioner was the defendant in 15 lawsuits relating to the Willed Body Program at University of California, Irvine. His insurance company hired Murchison & Cumming to defend and attorney Dan Longo handled the representation. The insurer also approved petitioner's request for Hartley & Hartley as *Cumis* counsel (*San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494] (*Cumis*)).[1] When Joseph Hartley of Hartley & Hartley was unable to attend some depositions, Longo covered them. Shortly afterwards, Longo learned that one of the real parties in interest, plaintiff in the underlying lawsuit, had contacted an attorney in another Murchison & Cumming office, George Genzmer, about representation. Murchison & Cumming withdrew from representing the insurer. (*Frazier v. Superior Court, supra,* 97 Cal.App.4th at p. 27.) Real parties moved to disqualify Hartley & Hartley based on its prior attorney-client relationship with Murchison & Cumming. The trial court granted the motion. (*Id.* at p. 28.)

Petitioner sought a writ of mandate to vacate the order of disqualification. (*Frazier v. Superior Court, supra*, 97 Cal.App.4th 23, 28.) The appellate court granted the petition. (*Id.* at p. 36.) It found that real parties sought double imputation, from Genzmer to Longo, from Longo to Hartley. No case had gone so far; instead, other jurisdictions had erected barriers to stop the spread of the penumbra of disqualification. (*Id.* at p. 31.) The court agreed this was proper because the primary concern being addressed was the attorney's possession of confidential information and here that attorney was Genzmer, not Longo or Hartley. Imputation from Genzmer to Longo to Hartley was "one bridge too far." (*Id.* at p. 33.)

---

[1] *Cumis* has been superseded by Civil Code section 2860.

The *Frazier* court further noted that under the *Adams* test it would not appear that any confidential information would normally have been imparted to Hartley & Hartley, even though Civil Code section 2860, subdivisions (d) and (f) required the exchange of certain information between insurer's counsel and *Cumis* counsel. (*Frazier v. Superior Court, supra*, 97 Cal.App.4th at pp. 34–35.) "Attorneys are 'member[s] of an ancient, honorable and deservingly honored profession.' [Citation.] We call them 'officers of the court.' [Citation.] Let's practice what we preach and treat them with the respect they have earned." (*Id.* at p. 36.)

■ We agree with the *Frazier* court that imputing Brown's access to DCA's confidential information to Doherty and then to Whipple carries the concept of vicarious disqualification too far. The trial court did not abuse its discretion in denying the motion to disqualify Whipple and his firm.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendants.

Blease, Acting P. J., and Raye, J., concurred.