Filed 10/14/25  Beck v. Catanzarite Law Corporation CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JUSTIN S. BECK,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CATANZARITE LAW CORPORATION et al.,<br><br>Defendants and Respondents. | G064410<br><br>(Super. Ct. No. 30-2020-01145998)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Randall J. Sherman, Judge. Affirmed. Motion to dismiss denied. Requests for judicial notice granted in part and denied in part. Motion to augment denied. Motion for sanctions denied.

Justin S. Beck, in pro. per., for Plaintiff and Appellant.

Catanzarite Law Corporation, Kenneth J. Catanzarite and Brandon E. Woodward for Defendants and Respondents.

This is an appeal from an order denying appellant Justin S. Beck's motion to disqualify Catanzarite Law Corporation and the firm's attorneys Kenneth J. Catanzarite, Nicole Marie Catanzarite Woodward, Brandon Woodward, and Tim James O'Keefe from representing certain other parties in this litigation.[1] We conclude Beck's motion to disqualify fails because of the law of the case doctrine. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2020, Beck filed his initial complaint in this action. In his subsequent second amended complaint, Beck named as defendants Catanzarite Law Corporation, Kenneth, Nicole, Brandon, O'Keefe, Mobile Farming Systems, Inc. (MFS), Richard Francis O'Connor, Jr., Amy Jeanette Cooper, Cliff Higgerson, Tony Scudder, James Duffy, Mohammed Zakhireh, TGAP Holdings, LLC (TGAP), Aroha Holdings, Inc., the State of California, the State Bar of California, Ruben Duran, Suzanne Grandt, and Eli David Morgenstern. Beck asserted multiple causes of action, including malicious prosecution.

Based on the record on appeal, Catanzarite Law Corporation appears to represent in this litigation, in addition to itself and its attorneys named as defendants, O'Connor, Cooper, Higgerson, Zakhireh, Duffy, TGAP, and MFS.[2] Catanzarite Law Corporation, Kenneth, Nicole, Brandon, O'Keefe, O'Connor, Cooper, Higgerson, Zakhireh, Duffy, TGAP, and MFS filed a

---

[1] As multiple individuals share the last name Catanzarite or Woodward, we refer to Kenneth, Nicole, and Brandon by their first names; we intend no disrespect.

[2] In this litigation, MFS (represented by Catanzarite Law Corporation) has cross-complained, and in its second amended cross-complaint, it named as defendants Beck and others.

respondents' brief, and we refer to them in this opinion collectively as respondents.

The current appeal is now the third appeal to this court from this litigation. (See *Beck v. Catanzarite Law Corporation* (July 13, 2022, G059766) [nonpub. opn.] (*Beck*); *Mobile Farming Systems, Inc. v. Horwitz + Armstrong* (July 13, 2022, G060315) [nonpub. opn.] (*MFS*).) Additionally, there is a history of prior appeals to this court from other cases. (See *FinCanna Capital Corp. v. Cultivation Technologies, Inc.* (June 28, 2021, G058700, G058942, G058931) [nonpub. opn.] (*FinCanna*); *Cultivation Technologies, Inc. v. Duffy* (Nov. 12, 2021, G059457) [nonpub. opn.] (*CTI*).) As this court in *Beck* described, "Catanzarite filed multiple but similar lawsuits within a one-year period, all of which arise from a dispute between shareholders of MFS and Cultivation Technologies, Inc. (CTI)." (*Beck, supra*, G059766.) Similar to *Beck*, "[w]e incorporate by reference a detailed description of these cases from our opinion *FinCanna*," and for consistency, we refer to these superior court cases as the Pinkerton Action, the MFS Action, the Mesa Action, the Cooper Action, the FinCanna Action, and the Scottsdale Action. (*Ibid.*)

In *FinCanna*, this court considered three consolidated appeals regarding orders granting CTI's motions to disqualify Catanzarite in the FinCanna Action and the Mesa Action. (*FinCanna, supra*, G058700, G058942, G058931.) As *FinCanna* summarized, the trial court had "granted CTI's disqualification motion relating to two lawsuits, deciding Catanzarite could not represent the following parties (1) CTI; (2) three CTI subsidiaries (Coachella Manufacturing, LLC, Coachella Distributors, LLC, and DS Gen, LLC, hereafter collectively referred to as CTI Subsidiaries); and (3) a group of CTI shareholders bringing a derivative lawsuit." (*Ibid.*) Catanzarite Law Corporation appealed the disqualification orders in the FinCanna Action and

3

the Mesa Action. (*Ibid.*) This court in *FinCanna* ultimately affirmed "the court's orders disqualifying Catanzarite from representing CTI, CTI Subsidiaries, and the group of shareholder plaintiffs in the Mesa Action." (*Ibid.*)

However, the *FinCanna* court did not review the trial court's denial of Beck and others' joinder motions in CTI's motions to disqualify Catanzarite Law Corporation in the Pinkerton Action and MFS Action.[3] The *FinCanna* court stated, "No party appealed from the orders denying Catanzarite's disqualification in the MFS and Pinkerton Actions." (*FinCanna, supra*, G058700, G058942, G058931.)

Regarding the prior appeals in this litigation, *Beck* and *MFS* were appeals from certain orders regarding anti-SLAPP motions under Code of Civil Procedure section 425.16. (*Beck, supra*, G059766; *MFS, supra*, G060315.) During the appeal in *Beck*, Beck filed in this court a motion to disqualify Catanzarite Law Corporation, Kenneth, Nicole, Brandon, and O'Keefe.[4] A panel of this court in *Beck* noted, Beck "argues that for the same reasons this court upheld the disqualification orders regarding the Mesa

---

[3] The trial court had denied Beck's joinder motions because they were untimely and, alternatively, the moving parties lacked standing.

Beck also filed a joinder motion in CTI's motion to disqualify Catanzarite Law Corporation in the Mesa Action. Although the trial court granted CTI's motion to disqualify Catanzarite Law Corporation in the Mesa Action, it denied Beck's joinder motion because it was untimely and, alternatively, the moving parties lacked standing.

[4] Beck had previously filed in the trial court a motion to disqualify, but as *Beck* noted, "it appears from our record that the court did not rule on it before granting the defendants' anti-SLAPP motions." (*Beck, supra*, G059766.)

4

Action shareholders (Cooper, Higgerson, and Duffy), we must now disqualify Catanzarite from representing MFS/CTI shareholders in this appeal. Specifically, he asserts Catanzarite's ongoing concurrent representation of clients with conflicting interests triggered mandatory disqualification." (*Beck, supra*, G059766.) *Beck* addressed Beck's motion to disqualify and the motion was denied. (*Ibid.*)

The *Beck* court noted the trial court had denied Beck's joinder motions for disqualification in the Pinkerton Action and MFS Action, and Beck did not appeal the denial. The *Beck* court analyzed the elements of collateral estoppel and determined the elements were met: "The disqualification issue in the previous proceeding is identical to the one sought to be relitigated. The trial court determined Beck and his codefendants did not have standing to bring the motion, which qualifies as a judgment on the merits. The third element is satisfied in that this malicious prosecution action involves the same parties as the previous proceeding."[5] (*Beck, supra*, G059766.) Thus, the *Beck* court concluded "Beck is collaterally estopped from relitigating the issue of Catanzarite's disqualification." (*Ibid.*)

---

[5] "'Collateral estoppel precludes a party from relitigating in a second proceeding the matters litigated and determined in a prior proceeding. The requirements for invoking collateral estoppel are the following: (1) the issue necessarily decided in the previous proceeding is identical to the one that is sought to be relitigated; (2) the previous proceedings terminated with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party to or in privity with a party in the previous proceeding.' [Citation.] An order disqualifying an attorney, which was not appealed, has collateral estoppel effect in a subsequent action involving the same issue." (*A.I. Credit Corp. Inc. v. Aguilar & Sebastinelli* (2003) 113 Cal.App.4th 1072, 1078.)

After the matter was remanded to the trial court, Beck again moved to disqualify Catanzarite Law Corporation and its attorneys[6] from representing certain other parties in this litigation. Beck also filed, among other things, a supporting declaration by Denise Pinkerton. Pinkerton stated, inter alia, "As attorney-in-fact for Roger Root, [she] retained Kenneth Catanzarite of Catanzarite Law Corporation on April 11, 2018, to pursue claims including $450,000 in total investments made by Mr. Root in [MFS] on behalf of the entity Jolly Roger, Inc." Pinkerton also said Kenneth "abandoned the attorney-client relationship with [her] and the Roots" in February 2024 after she refused to consent to conflicts of interest.

On July 5, 2024, the trial court denied Beck's current motion to disqualify. The court found Beck had "not established that he has standing to bring this motion, let alone adequate grounds for disqualification of defendants' counsel in this action."

MOTIONS ON APPEAL

Respondents filed a motion to dismiss this appeal and argue the order denying Beck's current motion to disqualify is not appealable. We disagree and conclude the order denying Beck's motion to disqualify is appealable.

"An order denying a motion to disqualify opposing counsel is an appealable order." (*Derivi Construction & Architecture, Inc. v. Wong* (2004) 118 Cal.App.4th 1268, 1272; see also *Meehan v. Hopps* (1955) 45 Cal.2d 213, 214–217 (*Meehan*).) Respondents concede, "In most instances, an order

---

[6] Besides Kenneth, Nicole, Brandon, and O'Keefe, Beck's motion also listed Eric V. Anderton. However, in his appellate brief, Beck does not list Anderton as one of the attorneys he is seeking to disqualify.

6

granting or denying a motion to disqualify is generally considered appealable." Respondents argue, however, that an order denying a motion to disqualify is not appealable where the attorneys did not previously represent the movant. In support respondents cite to *Haldane v. Haldane* (1963) 216 Cal.App.2d 12. We do not find *Haldane* to be persuasive support for respondents' argument. While the court in *Haldane* concluded an order denying a motion to disqualify was not appealable, the appellant in that case characterized the order denying the motion to disqualify as an interim adverse order, and notably, the court did not discuss *Meehan*. (*Haldane*, at pp. 13–14.) Even if *Haldane* could be construed as supporting respondents' argument, we are bound to follow *Meehan*, which we conclude is applicable here. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Beck also filed multiple requests for judicial notice and augmentation. On October 2, 2024, Beck filed a "Request for Judicial Notice (or in the Alternative, Motion to Augment Record)," which requested judicial notice of this court's prior opinions in *Beck*, *MFS*, *FinCanna*, and *CTI*. (Some capitalizations omitted.) The request to take judicial notice of these four prior

7

opinions is granted.[7] (See *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1171.)

On December 26, 2024, Beck filed a "Motion to Augment Record #2 and/or for Additional Evidence on Appeal," which requested that this court "augment the record and/or allow for additional evidence on appeal" of two exhibits. (Some capitalizations omitted.) The first exhibit is an October 17, 2024 minute order which shows the trial court stayed the case pending Beck's appeal of the denial of his motion to disqualify. We deny Beck's request to augment the record with this minute order because it is not relevant to the standing issue here.

The second exhibit is a document entitled "Notice of Action by Written Consent of the Shareholders of [MFS]. Taken July 3, 2024 To Be Consummated July 18, 2024" and appears to attach additional documents. (Some capitalizations omitted.) According to Beck, the circumstances "are truly exceptional" and this exhibit shows "a scramble to clean-up un-waivable conflicts for the same attorneys on behalf of [MFS] without a duly noticed shareholder meeting or unanimous consent, 'retroactively.'" Under the circumstances here, we deny Beck's request to augment or otherwise

---

[7] Respondents have not opposed taking judicial notice of these four opinions. However, in their respondents' brief, respondents "object to [Beck] frequently citing the [nonpublished] authority *FinCanna*" because respondents say it is not relevant to law of the case, res judicata, or collateral estoppel. We have cited *FinCanna* and *Beck* in this opinion because they are relevant to issues of collateral estoppel and law of the case, and we may also appropriately cite to prior nonpublished appellate decisions "to explain the factual background of the case and not as legal authority." (See *Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10; see also Cal. Rules of Court, rule 8.1115, subd. (b)(1).)

supplement the record with these new documents, which do not appear to have been before the trial court.

On February 6, 2025, Beck filed his "Request for Judicial Notice #3," which sought judicial notice of the following four exhibits: (1) "Plaintiff's Notice of and Motion for Order Disqualifying Counsel Samuel Y. Edgerton, Johnny L. Antwiler, and O'Hagan Meyer from Representing [CTI] in This Action and the Director Defendants, or in the Alternative, Order That [CTI] Not Pay the Attorneys Fees of Any of the Director Defendants Until Resolution of the Action; Declaration of Counsel in Support," which was filed by Kenneth and Nicole in the MFS Action; (2) the published opinion *Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477; (3) the published opinion *Whitten v. Dabney* (1915) 171 Cal. 621; and (4) the nonpublished opinion *Yip v. Zia* (Apr. 24, 2007, B188228). (Some capitalizations omitted.) We deny the request to take judicial notice of these four exhibits. The motion filed in the MFS Action is unnecessary to our decision and we do not need to take judicial notice of published opinions. (See *C.C. v. Superior Court* (2008) 166 Cal.App.4th 1019, 1021, fn. 1.) *Yip v. Zia, supra*, B188228, which is a nonpublished opinion from an unrelated case, may not be relied on under California Rules of Court, rule 8.1115, subdivision (b).

Beck also filed a motion for sanctions against Catanzarite Law Corporation, Kenneth, Nicole, Brandon, and O'Keefe. We deny Beck's motion for sanctions.

DISCUSSION

I.

DISQUALIFICATION AND STANDING PRINCIPLES

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee*); see also Code Civ. Proc., § 128, subd. (a)(5).) "Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest. [Citation.] A 'standing' requirement is implicit in disqualification motions. Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 (*Great Lakes*).) Additionally, "'[s]tanding arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed.' [Citation.] Thus, some sort of confidential or fiduciary relationship must exist or have existed before a

party may disqualify an attorney predicated on the actual or potential disclosure of confidential information." (*Ibid.*)[8]

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion." (*SpeeDee, supra*, 20 Cal.4th at p. 1143.) "[S]tanding is a legal question . . . ." (*Great Lakes, supra*, 186 Cal.App.4th at p. 1354.)

II.

THE LAW OF THE CASE DOCTRINE APPLIES

In their initial briefing on appeal here, the parties disputed whether Beck was collaterally estopped from relitigating disqualification. As *Beck* was a prior appeal in this same case, we invited the parties to file supplemental briefing regarding what effect the law of the case doctrine has on this appeal. Beck and respondents dispute its applicability here.

---

[8] *Great Lakes* also noted a minority view that was recognized in *Colyer v. Smith* (C.D.Cal. 1999) 50 F.Supp.2d 966. (*Great Lakes, supra*, 186 Cal.App.4th at p. 1357.) *Great Lakes* described this minority view as the following: "A nonclient must establish a 'personal stake' in the motion to disqualify opposing counsel that is sufficient to satisfy the standing requirements of article III of the United States Constitution. [Citation.] 'Generally, only the former or current client will have such a stake in a conflict of interest dispute.' [Citation.] But, where the ethical breach is "'manifest and glaring'" and so 'infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims' [citation], a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation." (*Ibid.*) However, *Great Lakes* determined *Colyer* "recognizes a minority view inasmuch as it permits a nonclient to move to disqualify opposing counsel," "[b]ut the nonclient must meet stringent standing requirements, that is, harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical." (*Great Lakes*, at p. 1358.)

11

"""The doctrine of 'law of the case' deals with the effect of the *first appellate decision* on the subsequent *retrial* or *appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." [Citation.]' [Citation.] 'Generally, the doctrine of law of the case does not extend to points of law which might have been but were not presented and determined in the prior appeal. [Citation.] As an exception to the general rule, the doctrine is . . . held applicable to questions not expressly decided but implicitly decided because they were essential to the decision on the prior appeal.'" (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127.) "Where there is no substantial difference between the evidence presented by the parties in connection with the previous appellate decision and the present appeal, the court's previous decision becomes the law of the case." (*Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 837–838 [noting previous legal determination in that case "constitutes the 'law of the case' so long as the material facts in the record on this appeal are the same as the facts we previously considered when reaching our determination"].)

Here, we conclude the law of the case doctrine applies such that Beck is precluded from relitigating the conclusion in *Beck* that he is collaterally estopped from relitigating the disqualification of Catanzarite Law Corporation, Kenneth, Nicole, Brandon, and O'Keefe. (*Beck, supra*, G059766.) In *Beck*, this court addressed whether the Catanzarite attorneys should be disqualified, analyzed collateral estoppel, and determined Beck was collaterally estopped. (*Ibid.*) Moreover, Beck's current arguments regarding disqualification are not substantially different—i.e., Beck's arguments are premised on alleged conflicts and ethical breaches by the Catanzarite

12

attorneys arising out of their representation of multiple parties in other litigations. These are materially the same asserted bases that were at issue in the prior appeal in *Beck*.

For example, in his motion to disqualify in *Beck*, Beck argued, at all times after filing the Pinkerton Action, the Catanzarite attorneys have "been adverse to all defendants in the instant action and all respondents to this appeal" and the Catanzarite attorneys' "disqualification from this appeal and the instant action is 'automatic' for the same reasons cited in" *FinCanna*. Beck also asserted in that prior motion the Catanzarite attorneys had "originally filed claims against MFS before 'taking over' through a series of questionable acts in January 23, 2019 that compromise all proceedings and indeed the integrity of our courts." Similarly in the current appeal, Beck argues the Catanzarite attorneys "are subject to mandatory disqualification in every matter subsequent to the Pinkerton Action as a matter of law— including their representation of" the nonattorney defendants in this case— and the Catanzarite attorneys "must be disqualified in this substantially related case," "[f]or representing MFS now after participating in its control dispute involving MFS and CTI, after representing purported MFS shareholders in the Pinkerton Action."

Beck advances several arguments for why law of the case should not apply. Beck says, although it is "admittedly unclear, the doctrine does not appear to apply to a ruling on a motion because it was not necessary [for] reversing anti-SLAPP orders in G059766." We disagree the law of the case doctrine cannot apply to the decision in *Beck* on the motion to disqualify. The

13

prior decision was not a summary denial; instead, the decision on the motion was addressed in detail as part of the opinion. (*Beck, supra*, G059766.)[9]

Additionally, Beck argues "the facts alleged, conceded, and/or found here are materially different in this appeal than in 2019: most had not yet happened." However, the purported facts supporting disqualification when the prior motion to disqualify in *Beck* was filed in 2021 and decided in 2022 are materially the same compared to the current motion to disqualify. The prior actions Catanzarite Law Corporation had filed representing various parties and of which purportedly provide the basis for the alleged conflicts here had already been filed, and *FinCanna* had already been decided. Moreover, this lawsuit by Beck and MFS's cross-complaint already had been filed (indeed, it was on an appeal from this lawsuit that the motion to disqualify was decided in *Beck*).[10]

Beck also asserts a new development is the Catanzarite attorneys are now witness advocates. Beck cites *Kennedy v. Eldridge* (2011) 201

---

[9] The only case Beck cites for this argument is *Bergman v. Drum* (2005) 129 Cal.App.4th 11, which did not involve whether the law of the case doctrine applied to a prior appellate decision on a motion to disqualify. (*Id.* at pp. 18–19.)

[10] Beck also argues a new development is the Catanzarite attorneys purportedly improperly compromising or tolling claims in the Pinkerton Action on behalf of MFS. However, this argument is not materially different for purposes of standing for Beck's motion to disqualify. In his prior motion to disqualify in *Beck*, Beck argued "O'Connor, Cooper, Higgerson, Scudder, Aroha, and TGAP were all dismissed from the [Pinkerton] Action by Catanzarite Law without court approval" and "[d]efendants would each and together support through declarations, shareholder votes or proxies, purported actions as unauthorized board members or officers in CTI, a series of lawsuits against appellant . . . while Catanzarite Law was *tolling claims against them* . . . ."

14

Cal.App.4th 1197 (*Kennedy*) and argues "the attorney-witness rule alone established standing for a [nonclient] to move for (and obtain) disqualification." As an initial matter, we note the Catanzarite attorneys were already named defendants and representing certain other parties at the time of the decision in *Beck*. However, even if this is construed as a new, substantially different allegation, it does not make a material difference to the standing issue because we conclude Beck does not have standing, under the circumstances here, to seek disqualification of the Catanzarite attorneys because they are likely to be witnesses.[11]

*Kennedy* did not conclude standing is not required for a movant to disqualify an opposing counsel who is likely to be a witness; instead, *Kennedy* conducted a standing analysis and ultimately found, under the facts in that case, the nonclient had standing to seek disqualification. (*Kennedy, supra*, 201 Cal.App.4th at pp. 1203–1205.) In *Kennedy*, there was a child custody dispute in which the mother sought to disqualify the paternal grandfather (who was an attorney) from representing the father. (*Id.* at p. 1200.) The paternal grandfather's firm had represented the maternal grandfather in a family law matter, the mother had submitted a declaration in that matter, and the mother's stepmother worked as a secretary at the

---

[11] Notably, Beck's motion to disqualify only sought to disqualify the Catanzarite attorneys from representing certain other parties in this action. Beck has not provided developed argument that the attorneys could be disqualified from representing themselves. (See *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620 ["'[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"].) Thus, even if the motion to disqualify had been granted, it would not eliminate the Catanzarite attorneys from being witness advocates.

paternal grandfather's firm. (*Id.* at pp. 1201–1202, 1205.) We do not find the facts in *Kennedy* to be analogous to here for purposes of standing.

Beck also argues a new development is Catanzarite's withdrawal of representing Pinkerton in the Pinkerton Action. Beck asserts the Catanzarite attorneys were engaged by Pinkerton to sue some of the parties they now represent here. According to Beck, the Catanzarite attorneys "abused Pinkerton/Roots as a 'hot potato,'" but the Catanzarite attorneys' "duty remains to Pinkerton even though they have terminated Pinkerton as of February 2024." This argument regarding Pinkerton does not somehow establish standing for Beck in this case to seek the disqualification of Catanzarite.[12]

Finally, Beck argues a court can decline to apply the law of the case doctrine when it would lead to an unjust outcome, and according to Beck, we should disregard the law of the case doctrine here. (See *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491–492 [stating "we have declined to adhere to it where its application would result in an unjust decision, e.g., where there has been a manifest misapplication of existing principles resulting in substantial injustice, or where the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations" but "[t]he unjust decision exception does not apply when there is a mere disagreement with the prior appellate decision"].) We do not conclude the circumstances here justify disregarding the law of the case doctrine. Beck has repeatedly filed motions to disqualify Catanzarite, and to disregard the law of the case doctrine here would

---

[12] While Pinkerton provided a declaration in support of Beck's motion, Pinkerton has not moved to disqualify the Catanzarite attorneys.

16

significantly undermine the primary purpose of the doctrine, which is judicial economy. (See *Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 435 ["primary purpose served by the law-of-the-case rule is one of judicial economy"].) Nor do we conclude the decision in *Beck* regarding Beck's motion to disqualify and collateral estoppel is a manifest misapplication of existing principles that results in a substantial injustice.[13]

DISPOSITION

The July 5, 2024 order denying Beck's motion to disqualify is affirmed. Respondents' motion to dismiss is denied. Beck's requests for judicial notice are granted in part and denied in part. Beck's motion for

---

[13] Beck also argues the trial court erred by failing to sua sponte disqualify the Catanzarite attorneys. To the extent Beck is arguing the trial court here had a sua sponte duty to examine and rule on the merits of his disqualification motion even if he lacked standing, we disagree. Such a rule would entirely defeat the standing requirement. Beck cites to canon 3D(2) of the California Code of Judicial Ethics, but we do not interpret that canon as requiring a trial court to always sua sponte undertake such an examination and ruling.

augmentation is denied. Beck's motion for sanctions is denied. Respondents shall recover their costs on appeal.


                                    MOTOIKE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


SCOTT, J.